WAINWRIGHT, SECRETARY, FLORIDA DEPART-
MENT OF CORRECTIONS *v.* GREENFIELD

No. 84–1480.   Argued November 13, 1985—Decided January 14, 1986

STEVENS, J., delivered the opinion of the Court, in which BRENNAN, WHITE, MARSHALL, BLACKMUN, POWELL, and O'CONNOR, JJ., joined. REHNQUIST, J., filed an opinion concurring in the result, in which BURGER, C. J., joined, *post*, p. 296.

*Ann Garrison Paschall*, Assistant Attorney General of Florida, argued the cause for petitioner. With her on the briefs was *Jim Smith*, Attorney General.

*James D. Whittemore*, by appointment of the Court, 472 U. S. 1006, argued the cause and filed a brief for respondent.*

JUSTICE STEVENS delivered the opinion of the Court.

Respondent entered a plea of not guilty by reason of insanity to a charge of sexual battery. At his trial in the Circuit Court for Sarasota County, Florida, the prosecutor argued that respondent's silence after receiving *Miranda* warnings was evidence of his sanity. The question presented is whether such use of a defendant's silence violates the Due Process Clause of the Fourteenth Amendment as construed in *Doyle* v. *Ohio*, 426 U. S. 610 (1976).

---

*Briefs of *amici curiae* urging affirmance were filed for the American Civil Liberties Union by *Charles S. Sims* and *Jack D. Novik;* and for the Illinois Psychological Association by *Donald Paull* and *Marilyn Martin.*

## I

The battery occurred in woods near a beach in the vicinity of Sarasota, Florida. After respondent released his victim, she drove directly to the police station to report the incident. Based on her description, Officer Pilifant identified respondent on the beach and placed him under arrest about two hours after the assault occurred. After handcuffing him, the officer gave respondent the warnings required by our decision in *Miranda* v. *Arizona*, 384 U. S. 436, 467–473 (1966). Specifically, Officer Pilifant stated:

> "You have a right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish. You can decide at any time to exercise these rights and not answer any questions or make any statements. Do you understand each of these rights I have explained to you? Having these rights in mind do you wish to talk to us now?" App. 73.

Respondent replied by stating that he understood his rights and that he wanted to talk to an attorney before making any statement. The *Miranda* warnings were repeated by Officer Pilifant while driving to the police station and reiterated by Detective Jolley after they arrived at the station. Each time that respondent was asked "if he wished to give up the right to remain silent," he declined, stating that he wanted to talk to an attorney. App. 77.

Under Florida law, when a defendant pleads not guilty by reason of insanity and when his evidence is sufficient to raise a reasonable doubt about his sanity, the State has the burden of proving sanity beyond a reasonable doubt.[1] In his case in

---

[1] See *Farrell* v. *State*, 101 So. 2d 130, 133 (Fla. 1958) ("when there is testimony of insanity sufficient to present a reasonable doubt of sanity the presumption [of sanity] vanishes. The defendant is then entitled to an

chief, the prosecutor introduced the testimony of Officer Pilifant and Detective Jolley. They described the occasions on which respondent had exercised his right to remain silent and had expressed a desire to consult counsel before answering any questions. Both officers repeated the several colloquies with respondent. In his defense, respondent did not testify, but two psychiatrists expressed the opinion that he was a paranoid schizophrenic who had been unable to distinguish right from wrong at the time of the alleged offense. In rebuttal, the prosecutor relied on a third psychiatrist who expressed a contrary opinion.

In his closing argument, over defense counsel's objection, the prosecutor reviewed the testimony of Officer Pilifant and Detective Jolley and suggested that respondent's repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension that was inconsistent with his claim of insanity.[2] The jury found respondent guilty and the judge sentenced him to life imprisonment.

---

acquittal if the state does not overcome the reasonable doubt"), cited in *Greenfield* v. *State*, 337 So. 2d 1021, 1023, n. 2 (Fla. App. 1976).

[2] He argued, in part:

"He goes to the car and the officer reads him his Miranda rights. Does he say he doesn't understand them? Does he say 'what's going on?' No. He says 'I understand my rights. I do not want to speak to you. I want to speak to an attorney.' Again an occasion of a person who knows what's going on around his surroundings, and knows the consequences of his act. Even down—as going down [to] the car as you recollect Officer Pil[i]fant said he explained what Miranda rights meant and the guy said—and Mr. Greenfield said 'I appreciate that, thanks a lot for telling me that.' And here we are to believe that this person didn't know what he was doing at the time of the act, and then even down at the station, according to Detective Jolley—He's down there. He says, 'Have you been read your Miranda rights?' 'Yes, I have.' 'Do you want to talk?' 'No.' 'Do you want to talk to an attorney?' 'Yes.' And after he talked to the attorney again he will not speak. Again another physical overt indication by the defendant . . . .

By a 2-to-1 vote, the Florida Court of Appeal for the Second District affirmed the conviction. *Greenfield* v. *State*, 337 So. 2d 1021 (1976). After noting that "prosecutorial comment relating to a defendant's insistence on his right to remain silent generally constitutes reversible error," *id.*, at 1022, the majority held that the general rule did not apply to a case in which an insanity plea had been filed. The dissenting judge suggested that the application of the general rule would not have prejudiced the prosecution because the "questions and answers could have been couched in such a manner as to permit the officer to convey to the jury the fact that the appellant carried on a perfectly rational conversation without specifically stating that he chose to avail himself of his right to remain silent." *Id.*, at 1023.

The Florida Supreme Court granted respondent's petition for certiorari and summarily remanded the case to the Court of Appeal for reconsideration in light of *Clark* v. *State*, 363 So. 2d 331 (1978), a case in which it had held that improper comment on a defendant's silence was constitutional error reviewable on appeal if an adequate contemporaneous objection was made either at the time the evidence was introduced or at the time of the prosecutor's comment. *Greenfield* v. *State*, 364 So. 2d 885 (1978). On reconsideration, the Court of Appeal adhered to its earlier decision.

Having exhausted his state remedies, respondent filed a petition for a writ of habeas corpus in the Federal District Court. The petition was referred to a Magistrate. The State argued that the silence issue was barred because respondent's counsel had failed to make an adequate objection. The Magistrate concluded that federal review of the claim was not foreclosed because counsel had objected to the prosecutor's closing argument and because the Florida Court of Appeal had rejected the claim on its merits. The

---

"So here again we must take this in consideration as to his guilt or innocence, in regards to sanity or insanity." App. 96–98.

Magistrate, however, agreed with the Florida courts' disposition of the merits and recommended that the habeas corpus petition be denied. The District Court accepted that recommendation.[3]

The United States Court of Appeals for the Eleventh Circuit reversed. 741 F. 2d 329 (1984). Disagreeing with two other Federal Courts of Appeals[4]—but not with the position taken by the Florida Supreme Court in a case decided after this respondent had exhausted his state remedies, see *State* v. *Burwick*, 442 So. 2d 944 (1983), cert. denied, 466 U. S. 931 (1984)—the Court of Appeals held that under the reasoning of *Doyle* v. *Ohio*, 426 U. S. 610 (1976), respondent was entitled to a new trial. We agree.

## II

In *Doyle*, the defendants had taken the witness stand and offered an exculpatory explanation for their participation in what the State's evidence had portrayed as a routine marihuana transaction. On cross-examination the prosecutor impeached their testimony by asking them why they had not explained their conduct at the time of their arrest. The Court held that such cross-examination was fundamentally unfair

---

[3] The Florida Attorney General did not object to the Magistrate's conclusion that the Florida Court of Appeal had rejected respondent's claim on its merits. In his petition for rehearing in the United States Court of Appeals for the Eleventh Circuit, the Attorney General renewed the argument that the postarrest, post-*Miranda* warnings silence issue was barred by *Wainwright* v. *Sykes*, 433 U. S. 72 (1977). He advances the same argument in this Court. However, as the Magistrate concluded, the Florida appellate court clearly addressed the issue on the merits. Thus, we must reject the Attorney General's argument. See *Ulster County Court* v. *Allen*, 442 U. S. 140, 149 (1979); *Mullaney* v. *Wilbur*, 421 U. S. 684, 704, n. (1975) (REHNQUIST, J., concurring). Cf. *Franks* v. *Delaware*, 438 U. S. 154, 161–162 (1978); *Raley* v. *Ohio*, 360 U. S. 423, 436–437 (1959); *Manhattan Life Insurance Co.* v. *Cohen*, 234 U. S. 123, 134 (1914).

[4] See *Sulie* v. *Duckworth*, 689 F. 2d 128 (CA7 1982), cert. denied, 460 U. S. 1043 (1983); *United States* v. *Trujillo*, 578 F. 2d 285 (CA10), cert. denied, 439 U. S. 858 (1978).

and therefore violated the Due Process Clause of the Fourteenth Amendment.

The source of the unfairness was the implicit assurance contained in the *Miranda* warnings "that silence will carry no penalty."[5] The critical importance of the implied promise that is conveyed to an arrested person by the *Miranda* warnings has been repeatedly confirmed in subsequent decisions. Thus, in *Fletcher* v. *Weir*, 455 U. S. 603, 606 (1982), we explained:

> "In *Jenkins* [v. *Anderson*, 447 U. S. 231 (1980)], as in other post-*Doyle* cases, we have consistently explained *Doyle* as a case where the government had induced silence by implicitly assuring the defendant that his silence would not be used against him. In *Roberts* v. *United States*, 445 U. S. 552, 561 (1980), we observed that the

---

[5] "Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial. MR. JUSTICE WHITE, concurring in the judgment in *United States* v. *Hale*, [422 U. S.], at 182–183, put it very well:

"'[W]hen a person under arrest is informed, as *Miranda* requires, that he may remain silent, that anything he says may be used against him, and that he may have an attorney if he wishes, it seems to me that it does not comport with due process to permit the prosecution during the trial to call attention to his silence at the time of arrest and to insist that because he did not speak about the facts of the case at that time, as he was told he need not do, an unfavorable inference might be drawn as to the truth of his trial testimony. . . . Surely Hale was not informed here that his silence, as well as his words, could be used against him at trial. Indeed, anyone would reasonably conclude from *Miranda* warnings that this would not be the case.'" *Doyle* v. *Ohio*, 426 U. S., at 618–619 (footnotes omitted).

In *United States* v. *Hale*, 422 U. S. 171 (1975), the Court had held that the use of postarrest, post-*Miranda* warnings silence was impermissible in federal prosecutions. The Court based its holding on its supervisory power in federal proceedings and left open the constitutional question. JUSTICE WHITE's concurrence argued that the use violated due process, and it was that view the Court adopted in *Doyle*.

postconviction, presentencing silence of the defendant did not resemble 'postarrest silence that may be induced by the assurances contained in *Miranda* warnings.' In *Jenkins*, we noted that the failure to speak involved in that case occurred before the defendant was taken into custody and was given his *Miranda* warnings, commenting that no governmental action induced the defendant to remain silent before his arrest. 447 U. S., at 239–240. Finally, in *Anderson v. Charles*, 447 U. S. 404, 407–408 (1980), we explained that use of silence for impeachment was fundamentally unfair in *Doyle* because '*Miranda* warnings inform a person of his right to remain silent and assure him, at least implicitly, that his silence will not be used against him. . . . *Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances.'"

Since *Fletcher*, moreover, we have continued to reiterate our view that *Doyle* rests on "the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial." *South Dakota v. Neville*, 459 U. S. 553, 565 (1983).[6] *Doyle* and subsequent cases have thus made clear that breaching the implied assurance of the *Miranda* warnings is an affront to the fundamental fairness that the Due Process Clause requires.[7]

---

[6] That this "fundamental unfairness" derives from the implicit assurances of the *Miranda* warnings is supported by our holdings that due process is not violated by the impeachment use of pre-*Miranda* warnings silence, either before arrest, *Jenkins v. Anderson*, 447 U. S. 231 (1980), or after arrest, *Fletcher v. Weir*, 455 U. S. 603 (1982), or of post-*Miranda* warnings statements, *Anderson v. Charles*, 447 U. S. 404 (1980); nor is it violated by the use of a refusal to take a state test that does not involve *Miranda*-like warnings, *Neville*.

[7] Notably, the Court in *Doyle* did not rely on the contention that Ohio had violated the defendants' Fifth Amendment privilege against self-incrimination by asking the jury to draw an inference of guilt from the exercise of their constitutional right to remain silent. Cf. *Griffin v. Cali-*

The Florida Attorney General argues that *Doyle* does not control this case because proof of sanity is significantly different from proof of the commission of the underlying offense, and that the *Doyle* due process rationale thus does not apply. At the outset, we note that, in this case, unlike *Doyle* and its progeny, the silence was used as affirmative proof in the case in chief, not as impeachment.[8] The Florida Attorney General argues that an insanity defense should be viewed as an "affirmative defense," and that the use of silence to overcome an insanity defense should thus be viewed as impeachment. Without accepting that argument, or its characterization of the insanity defense,[9] we address the claim that the *Doyle* due process analysis should not prevent the use of post-*Miranda* warnings silence to overcome an insanity defense.

We find no warrant for the claimed distinction in the reasoning of *Doyle* and of subsequent cases. The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the State gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.

---

*fornia*, 380 U. S. 609 (1965) (Fifth Amendment prohibits prosecutorial comment on defendant's refusal to testify).

[8] The constitutional violation might thus be especially egregious because, unlike *Doyle*, there was no risk "that exclusion of the evidence [would] merely provide a shield for perjury." 426 U. S., at 626 (STEVENS, J., dissenting).

[9] Cf. n. 1, *supra*.

The Florida Attorney General argues, however, that introduction of the evidence of respondent's post-*Miranda* warnings silence no more violates the Constitution than did the reference to a defendant's refusal to take a blood-alcohol test in *South Dakota* v. *Neville, supra.* In *Neville,* we rejected the due process challenge—and the attempt to rely on *Doyle*—because of the important differences between the refusal to take a blood-alcohol test and the post-*Miranda* warnings silence. We noted that, unlike the refusal to take an optional blood-alcohol test, the right of silence after *Miranda* warnings is of constitutional dimension. 459 U. S., at 565. We also noted that, unlike the state warning about the refusal to take the blood-alcohol test (which expressly advised Neville that his refusal could be used to deprive him of his driving privileges), *Miranda* warnings contain implied assurances that silence will *not* be used against the suspect. 459 U. S., at 565–566. Both *Doyle* elements—the constitutional dimension and the implied assurance—are equally present when post-*Miranda* warnings silence is used to prove sanity. Unlike Neville, therefore, and like Doyle, Greenfield received "the sort of implicit promise to forgo use of evidence that would unfairly 'trick' [him] if the evidence were later offered against him at trial." 459 U. S., at 566.[10]

The Florida Attorney General further contends that a suspect's comprehension of *Miranda* warnings, as evidenced by his silence, is far more probative of sanity than of commission of the underlying offense. He therefore argues that the reliance on the "insolubly ambiguous" character of the post-*Miranda* warnings silence in the *Doyle* opinion, 426 U. S., at 617, is inappropriate in the context of an insanity defense. We need not evaluate the probative value of respondent's si-

---

[10] To the extent that the Attorney General seeks to rely on *Neville*'s Fifth Amendment holding, his argument is inapposite because the *Doyle* analysis rests on the Due Process Clause, not the Fifth Amendment.

294

lence to reject this argument.[11]   For the ambiguity of the defendants' silence in *Doyle* merely added weight to the Court's principal rationale, which rested on the implied assurance contained in the *Miranda* warning.   See *South Dakota* v. *Neville*, 459 U. S., at 564–565; *Jenkins* v. *Anderson*, 447 U. S. 231, 239–240 (1980).[12]   The Attorney General's argument about the probative value of silence therefore fails entirely to meet the problem of fundamental unfairness that flows from the State's breach of its implied assurances.

Finally, the Florida Attorney General argues that it is vitally important to be able to present evidence of a defendant's sanity at the time of the offense and shortly thereafter.

[11] We note, however, that the Florida Supreme Court does not share the Florida Attorney General's view about the probative value of silence in an insanity context.   As the Florida court wrote in *State* v. *Burwick*, 442 So. 2d 944, 948 (1983):

"Post-arrest, post-*Miranda* silence is deemed to have dubious probative value by reason of the many and ambiguous explanations for such silence. 422 U. S. at 180 . . . .   Contrary to what *Greenfield* intimates, these ambiguities attendant to post-*Miranda* silence do not suddenly disappear when an arrestee's mental condition is brought into issue.   The same evidentiary problems addressed by the Supreme Court in *Hale* are present in the case before us.   For example, one could reasonably conclude that custodial interrogation might intimidate a mentally unstable person to silence.   Likewise, an emotionally disturbed person could be reasonably thought to rely on the assurances given during a *Miranda* warning and thereafter choose to remain silent.   In sum, just what induces post-arrest, post-*Miranda* silence remains as much a mystery today as it did at the time of the *Hale* decision.   Silence in the face of accusation is an enigma and should not be determinative of one's mental condition just as it is not determinative of one's guilt.   Accordingly, the state should not be permitted to confirm Burwick's mental state with evidence of his post-*Miranda* silence."

[12] Several commentators have also emphasized that, particularly in light of later cases, *Doyle*'s probativeness rationale is secondary to its implied assurance rationale.   See, *e. g.*, Note, Protecting *Doyle* Rights After *Anderson* v. *Charles:* The Problem of Partial Silence, 69 Va. L. Rev. 155, 165, n. 56 (1983); Clark, Impeachment With Post-Arrest Silence: The Emergence of a "New Federalism" Approach, 19 Am. Crim. L. Rev. 751, 759 (1982); The Supreme Court, 1979 Term, 94 Harv. L. Rev. 77, 84–85 (1980).

However, as the dissenting judge in the Florida Court of Appeal recognized in this very case, the State's legitimate interest in proving that the defendant's behavior appeared to be rational at the time of his arrest could have been served by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional rights to remain silent and to consult counsel.[13]  What is impermissible is the evidentiary use of an individual's exercise of his constitutional rights after the State's assurance that the invocation of those rights will not be penalized.

In *Doyle*, we held that *Miranda* warnings contain an implied promise, rooted in the Constitution, that "silence will carry no penalty."  426 U. S., at 618.  Our conclusion that it was fundamentally unfair for the Ohio prosecutor to breach that promise by using the defendants' postarrest, post-*Miranda* warnings silence to impeach their trial testimony requires us also to conclude that it was fundamentally unfair for the Florida prosecutor to breach the officers' promise to respondent by using his postarrest, post-*Miranda* warnings silence as evidence of his sanity.[14]

The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

---

[13] In his petition and brief, the Attorney General has not contested the Eleventh Circuit's view that the prosecutorial comment was directed at the "defendant's post-*Miranda* warning silence," 741 F. 2d 329, 333 (1984), or its conclusion that this comment, if erroneous, was not harmless, *id.*, at 336.  Nor has respondent contested the point that a prosecutor may legitimately inquire into and comment upon "purely 'demeanor' or 'behavior' evidence."  Brief for Respondent 14.  With respect to post-*Miranda* warnings "silence," we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted.

[14] This conclusion is supported by a number of state decisions, in addition to that of Florida.  See *Commonwealth* v. *Mahdi*, 388 Mass. 679, 448 N. E. 2d 704 (1983); *People* v. *Vanda*, 111 Ill. App. 3d 551, 444 N. E. 2d 609 (1982), cert. denied, 464 U. S. 841 (1983); *People* v. *Schindler*, 114 Cal. App. 3d 178, 170 Cal. Rptr. 461 (1980).

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, concurring in the result.

I agree with the Court that our opinion in *Doyle* v. *Ohio*, 426 U. S. 610 (1976), shields from comment by a prosecutor a defendant's silence after receiving *Miranda* warnings, even though the comment be addressed to the defendant's claim of insanity. I write separately, however, to point out that it does not follow from this that the Court of Appeals, which took the same position, reached the correct result. That court expanded *Doyle* to cover not merely silence, but requests for counsel, and ignored the fact that the evidence upon which the prosecutor commented had been admitted without objection. Analyzed in these terms, the Court of Appeals' conclusion that the "error" was not harmless is suspect: The portion of the prosecutor's closing statement that the Court of Appeals held amounted to constitutional error was in large part unobjectionable from a constitutional point of view, and the officer's testimony relating to silence was already before the jury, without objection. I concur in the result reached today because one of the prosecutor's comments, however brief, was an improper comment on respondent's silence, and the State does not argue here that any error was harmless beyond a reasonable doubt.

In *Doyle*, the Court said:

"The warnings mandated by *[Miranda]* . . . require that a person taken into custody be advised immediately that he has the right to remain silent, that anything he says may be used against him, and that he has a right to retained or appointed counsel before submitting to interrogation. Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. . . . Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assur-

ance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." 426 U. S., at 617–618 (footnotes omitted).

*Doyle* addressed the propriety of cross-examining defendants about their silence following *Miranda* warnings. Here the Court of Appeals assumed, without analysis, that respondent's conduct and statements following the warnings, such as his requests for a lawyer, should be treated the same as *silence*. I disagree. *Doyle* deemed silence "insolubly ambiguous"—the defendant may be indicating he has nothing to say in his defense, or he may be relying on the assurance that he has a right to remain silent. Similarly, a request for a lawyer has essentially no probative value where the question is one of guilt or innocence: No sensible person would draw an inference of guilt from a defendant's request for a lawyer after he had been told he had a right to consult one; it is simply not true that only a guilty person would want to have a lawyer present when being questioned by the police.

But a request for a lawyer may be highly relevant where the plea is based on insanity. There is no "insoluble ambiguity" in the request; it is a perfectly straightforward statement tending to show that an individual is able to understand his rights and is not incoherent or obviously confused or unbalanced. While plainly not conclusive proof of sanity, the request for a lawyer, like other coherent and responsive statements made near the time of the crime, is certainly relevant.*

---

*It may be, as the Court suggests, that the prosecution could have served its legitimate purposes "by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional righ[t] . . . to consult counsel," *ante*, at 295. That the prosecutor might have done things differently, however, does not render unconstitutional his express reference to respondent's invocation of his right to counsel. Indeed, I

Nor does the "unfairness" prong of *Doyle*, based on the implicit assurance in the *Miranda* warnings that "silence will carry no penalty," bar prosecutorial comment on respondent's requests for a lawyer. Officer Pilifant told respondent: "You have a right to remain silent. Anything you say can and will be used against you in a court of law." App. 73. The logical corollary of this warning—that what respondent *does* say *can* be used against him—is that what he does *not* say *cannot*.

Officer Pilifant's description of respondent's right to counsel was framed differently:

> "You have the right to talk to a lawyer and have him present with you while you are being questioned. If you cannot afford to hire a lawyer one will be appointed to represent you before any questioning if you wish." *Ibid.*

I do not read the foregoing statement as containing any promise, express or implied, that the words used in responding to notice of the right to a lawyer will not be used by the State to rebut a claim of insanity. In the absence of such a promise, respondent surely was not "tricked" into asking for a lawyer, and the prosecutor's reference to respondent's request was in no way "fundamentally unfair."

Nor do I believe that relevant comment about the invocation of the right to an attorney, made in an effort to defeat a claim of insanity, works the sort of "penalty" condemned in *Doyle*. Inviting the jury to draw an inference of guilt, which separates a defendant from the mass of society, is one thing; inviting it to draw an inference of sanity or rationality, which merely places a defendant together with the mass of society, is quite another. A suspect's right to an attorney during

---

would think that quotation of a defendant's precise words is a far more effective means of disproving insanity than are general references to his "rationality" or "responsiveness."

questioning, which is derivative of his right to remain silent, see *Miranda* v. *Arizona*, 384 U. S. 436, 469–470 (1966), is not unconstitutionally burdened by use of his request as evidence of his ability to distinguish right from wrong.

Turning to the prosecutor's closing argument in this case, I believe that far less of what the Court of Appeals described as the "challenged portion" violated *Doyle* than did the Court of Appeals. That "challenged portion" consists of the following statement:

> "Let's go on to Officer Pilifant who took the stand, who the psychiatrists, both defense psychiatrists, never even heard about, never even talked to. He states that he saw this fellow [respondent] on the beach and that he went up to him, talked to him, and then arrested him for the offense. The fellow voluntarily put his arms behind his back and said he would go to the car. This is supposedly an insane person under the throws *[sic]* of an acute condition of schizophrenic paranoia at the time. He goes to the car and the officer reads him his Miranda rights. Does he say he doesn't understand them? Does he say 'What's going on?' No. He says 'I understand my rights. I do not want to speak to you. I want to speak to an attorney.' Again an occasion of a person who knows what's going on around his surroundings, and knows the consequences of his act. Even down—as going down [to] the car as you recollect Officer Pil[i]fant said he explained what Miranda rights meant and the guy said—and Mr. Greenfield said 'I appreciate that, thanks a lot for telling me that.' And here we are to believe that this person didn't know what he was doing at the time of the act, and then even down at the station, according to Detective Jolley—He's down there. He says, 'Have you been read your Miranda rights?' 'Yes, I have.' 'Do you want to talk?' 'No.' 'Do you want to talk to an attorney?' 'Yes.' And after he talked to the

attorney again he will not speak. Again another physical overt indication by the defendant . . . .

⋅ ⋅ ⋅ ⋅ ⋅

"So here again we must take this in consideration as to his guilt or innocence, in regards to sanity or insanity." App. 96–98.

The first part of the statement describes, in the words of the arresting officer, prearrest conduct of the defendant. *Doyle* does not bar this sort of testimony. *Fletcher* v. *Weir*, 455 U. S. 603 (1982). When the defendant was read his *Miranda* rights, he did *not* remain silent; he said:

"I understand my rights. I do not want to speak to you. I want to speak to an attorney. . . . [And then] I appreciate that, thanks a lot for telling me that."

Thus *Doyle* does not cover this portion of the closing argument either. While a defendant's invocation of his right to an attorney, or his statement that he understands (and appreciates being informed about) his rights, would be largely irrelevant in the case of most defenses, it is surely relevant in the context of a claim of insanity.

The only portion of the summation that can, in my opinion, be said to violate *Doyle* is the following:

"[E]ven down at the station, according to Detective Jolley—He's down there. He says, 'Have you been read your Miranda rights?' 'Yes, I have.' 'Do you want to talk?' 'No.' 'Do you want to talk to an attorney?' 'Yes.' And after he talked to the attorney again he will not speak."

This is a comment on respondent's silence, and as such it constitutes a breach of the *Miranda* warning's "implied assurance" that his silence would not be used against him.

The Court of Appeals' determination that the prosecutor's error was not harmless was based on its apparent conclusion that all of the "challenged portion" of the prosecutor's state-

ment violated the constitutional rights of the defendant. The court stated:

> "The prosecutor relied strongly on [respondent's] *conduct* as evidence of sanity; his closing argument was not lengthy and the *portion challenged here* was not minor. We cannot say that the error was harmless beyond a reasonable doubt." 741 F. 2d 329, 336 (1984) (emphasis added).

But as noted above, actually a much smaller portion of this statement was constitutionally objectionable. And in evaluating whether or not this minute extract from the prosecutor's closing argument can be deemed harmless, I think an important factor apparently not considered by the Court of Appeals was that the testimony on which the summation was based had already come in without objection. It was there for the jury to consider on its own regardless of whether the prosecutor ever mentioned it. This fact, together with the brevity of the prosecutor's improper comment, at least suggests that the error was harmless beyond a reasonable doubt. See *Cupp* v. *Naughten*, 414 U. S. 141 (1973); *Donnelly* v. *DeChristoforo*, 416 U. S. 637 (1974). As the Court points out, however, *ante*, at 295, n. 13, the Attorney General has not contested the Court of Appeals' conclusion that any error was not harmless. Accordingly, I concur in the result.