828 F.2d 18
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Abdul SAIYED, Defendant-Appellant.
 No. 86-5106
 United States Court of Appeals, Fourth Circuit.
 Submitted May 28, 1987.
Decided August 20, 1987.
 
 Fred Warren Bennett, Federal Public Defender, Stephen J. Cribari, Deputy Federal Public Defender, Thomas B. Mason, Assistant Federal Public Defender, on brief, for appellant.
 Breckinridge L. Willcox, United States Attorney, Susan M. Ringler, Assistant United States Attorney, on brief, for appellee.
 Before K.K. HALL, SPROUSE and WILKINS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Abdul Saiyed appeals his conviction of conspiracy to import heroin, importation of heroin, conspiracy to distribute heroin, and distribution of heroin, in violation of 21 U.S.C. Secs. 963, 952(a), 846 and 841(a)(1), respectively. He argues on appeal that the trial court committed reversible error in permitting a government witness to refer to Saiyed's exercise of his right to remain silent after arrest and in permitting prospective jurors to view a jury orientation film. Finding no reversible error, we affirm the judgment of conviction.
 
 
 2
 The evidence at trial showed that in January 1986 Saiyed had arranged a sale of heroin to a government agent from crew aboard the Pakistani vessel Khairpur, then docked in the Baltimore harbor. Saiyed, a resident of Montreal, Canada, testified at trial that in late 1983 he began providing drug information to the Royal Canadian Mounted Police and to the Drug Enforcement Administration office in Montreal. He hoped to receive money and assistance in immigrating to the United States in exchange for his information. Saiyed testified that he came to Baltimore on December 31, 1985, for two reasons: to get a big case for the DEA so he could get an immigration visa, and to purchase a small car with an engine to send back to his son in Pakistan. In rebuttal, the government presented evidence that DEA Montreal was unaware of Saiyed's trip to Baltimore, had not instructed him to make a case for the DEA, and had advised him never to act on his own but always to follow DEA's instructions.
 
 
 3
 The testimony about which Saiyed complains occurred in the government's case-in-chief. DEA Agent Chretien testified that he had advised Saiyed of his Miranda rights upon arrest and that Saiyed then stated that he had come to Baltimore to buy a go-cart to ship to Pakistan. Chretien further testified:
 
 
 4
 I made the comment that I thought it was strange for somebody to come from Canada to Baltimore to purchase a go-cart to go aboard a ship. He didn't respond to that.
 
 
 5
 . . ..
 
 
 6
 And then I asked him did he--what store did he go to here in the Baltimore area to look for a go-cart or had he made arrangements to purchase it. He didn't respond. He went onto a different subject.
 
 
 7
 . . ..
 
 
 8
 At that point he said that he was a D.E.A. informant; that he had worked for the Drug Enforcement Administration both in New York and in Canada and also stated that he worked with the Royal Canadian Mounted Police in Canada; that he had done other investigations--had done investigations, not other investigations, but had done investigations with them in the past.
 
 
 9
 I asked him then, did any of the D.E.A. agents or the Royal Canadian Mounted Police officers know that he was in Baltimore involved in this situation, and he said, not specifically Baltimore.
 
 
 10
 . . ..
 
 
 11
 Seeing that it was after midnight, I told him let's go under the assumption that what you are saying is true, that you are an informant. I requested his assistance in asking him to explain the situation right now, why he was involved with the two other defendants; to explain the negotiations that took place--
 
 
 12
 At this point Agent Chretien's testimony was interrupted, and during a bench conference the government indicated that Saiyed had, around this time, asserted his right to an attorney. Saiyed's counsel objected that testimony that Saiyed had requested an attorney would constitute an improper comment on Saiyed's exercise of his fifth amendment privilege. Counsel asked that the witness be instructed not to mention Saiyed's assertion of his right to an attorney and to say instead that Saiyed had 'elected not to respond to further questions and, at that point, the questioning was concluded.' Indicating that he did not see how the proffered response was any better than saying that Saiyed wanted to talk to his attorney, and that the best thing to do was to have said exactly what was said, the district judge overruled Saiyed's objection. Agent Chretien then testified that Saiyed 'stated he would like to consult with an attorney, that he would like to talk to one.'
 
 
 13
 On appeal, Saiyed maintains that the government made repeated references to the exercise of his fifth amendment privilege in violation of the rule stated in Doyle v. Ohio, 426 U.S. 610 (1976). In Doyle the Court held that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter breach that promise by using the silence to impeach his trial testimony. See Wainwright v. Greenfield, ---- U.S. ----, 54 U.S.L.W. 4077, 4079 (Jan. 14, 1986). Because of the constitutional dimensions of the rule established in Doyle, a violation of the rule requires reversal unless the reviewing court can conclude beyond a reasonable doubt that the error did not influence the jury's verdict. Chapman v. California, 386 U.S. 18 (1967). The factors to be weighed in determining whether the error was harmless beyond a reasonable doubt include:
 
 
 14
 1. The use to which the prosecution puts the postarrest silence.
 
 
 15
 2. Who elected to pursue the line of questioning.
 
 
 16
 3. The quantum of other evidence indicative of guilt.
 
 
 17
 4. The intensity and frequency of the reference.
 
 
 18
 5. The availability to the trial judge of an opportunity to grant a motion for mistrial or to give curative instructions.
 
 
 19
 Williams v. Zahradnick, 632 F.2d 353, 361-62 (4th Cir. 1980).
 
 
 20
 We find here that a Doyle error occurred when the government introduced evidence that Saiyed asked for an attorney. Upon review of the factors listed in Williams, however, we concluded that the error was harmless beyond a reasonable doubt.
 
 
 21
 We note, with respect to the use made of the postarrest silence, that the reference to Saiyed's assertion of his right to counsel was simply part of a narrative description of the agent's interview with Saiyed, and that the government made no effort to use the assertion to undermine Saiyed's credibility. Cf. Alderman v. Austin, 695 F.2d 124, 126 (5th Cir. 1983) (reference to defendant's silence was not accusatory in nature and was not used for any improper purpose such as impeachment). Although the reference was made during questioning by the government, the line of questioning revealed, for the most part, statements that were consistent with Saiyed's trial testimony, and the record does not suggest that the reference had a significant effect on Saiyed's defense. Rather, Saiyed's defense that he was investigating the situation for the DEA was refuted by the government's evidence that the DEA had no knowledge that Saiyed was in Baltimore and by the evidence that the sale of heroin was accomplished in accordance with Saiyed's plans and directions.
 
 
 22
 Reference to Saiyed's postarrest silence was neither intense nor frequent. We reject Saiyed's argument that Agent Chretien's statements, underlined in the excerpt above, that Saiyed 'didn't respond' at two points were a comment on Saiyed's assertion of his fifth amendment rights. Although Saiyed did not respond at those points to the particular comments of the agent, he did continue to talk and did not attempt to invoke his fifth amendment privilege. In this context we do not believe the agent intended to comment on the defendant's exercise of his right to remain silent or that the jury understood the agent's testimony in this way. See United States v. Ochoa-Sanchez, 676 F.2d 1283, 1286-87 (9th Cir.), cert. denied, 459 U.S. 911 (1982). We note that Saiyed did not object to either reference to his failure to respond. Saiyed concedes that the government's only reference during the six-day trial to his postarrest silence occurred during Agent Chretien's testimony, and that the government did not mention the issue in closing argument. In view of the isolated, undeveloped nature of the reference and the extensive evidence of guilt, we conclude that the Doyle error was harmless in this case.
 
 
 23
 We find without merit Saiyed's second claim, that the juror orientation film and particularly the reference in that film to the function of the grand jury created prejudicial error. The film correctly summarizes the grand jury's role and states that the indictment returned by a grand jury is neither evidence nor proof of a crime. Moreover, the trial judge instructed the jury at the close of trial that:
 
 
 24
 An indictment is but a formal method of accusing a defendant of a crime. It is not evidence of any kind against the defendants and does not create any presumption nor permit any inference of guilt.
 
 
 25
 The judge also instructed the jurors that if they perceived any difference in the law as contained in his charge and anything they had heard in the orientation film that his charge governed. We can find no basis in the record for Saiyed's claim that he was prejudiced by the jury orientation film.
 
 
 26
 The judgment of conviction is affirmed. We dispense with oral argument because the facts and legal contentions are adequately developed in the briefs and argument would not significantly aid the decisional process.
 
 
 27
 AFFIRMED.