942 So.2d 1025 (2006)
Miguel MUNOZ-PEREZ, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-203.
District Court of Appeal of Florida, Fourth District.
December 6, 2006.
*1026 Carey Haughwout, Public Defender, and Marcy K. Allen, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and James J. Carney, Assistant Attorney General, West Palm Beach, for appellee.
KLEIN, J.
Appellant was convicted of burglary with a battery and aggravated battery with a knife. We conclude that appellant's possession of the knife was insufficient to satisfy the requirement that he was using a deadly weapon while committing a battery. We further find that the prosecutor's comment to appellant, on cross-examination of appellant, that they had never spoken before, was, on these specific facts, a comment on his silence which requires a new trial.
According to the victim, she and her husband were in their home one afternoon when she heard glass break and, a few minutes later, a knock on her back door. When she opened the door she saw the appellant crouching on the ground. He forced his way into the kitchen, grabbed her, and said two words she could not understand. When she screamed, he grabbed a sharp knife and held it near her throat. Appellant then bolted into the dining room and dove head first through a closed glass window.
The victim's husband then went out the front door and observed appellant under a truck, covered in blood. Appellant got up and was swinging the knife in a threatening manner. When the victim's husband picked up a coconut, appellant put down the knife and sat down. Soon thereafter the police, who were called by a neighbor, arrived and appellant was seen kicking at the police and acting in an irrational manner.
*1027 At trial appellant took the stand and testified that he had been depressed, did not know what he was doing, and thought someone was following him trying to kill him. He described the events at the home of the victim in a manner generally consistent with their testimony, claiming that he had asked the woman, after he went in the house, to "help me." The state's first question on cross-examination was, "We've never spoken before, have we?". To this appellant answered in the negative. Appellant then objected that the state had commented on his right to remain silent and moved for a mistrial. The court denied the motion for mistrial but instructed the jury as follows:
All right, ladies and gentlemen, as you know, through the voir dire, the defendant has the right to remain silent, and he has, so, and probably upon advice of his attorney he did not and would not talk to the prosecutor. That's generally something that doesn't happen.
So I don't want you to think badly of Mr. Munoz-Perez because it's a very very rare day that a defendant charged with a crime actually talks to the prosecutor during the pendency of the litigation.
On closing argument, the state commented:
Remember I asked him on the stand, I said, have you ever spoken to me before, have we ever talked? Well, that was because that's the first time anybody has ever heard insanity. That I was crazy.
Appellant then objected again that this was a comment on his right to remain silent, but did not move for a mistrial.
Appellant argues correctly that "the Due Process Clause of the Fourteenth Amendment prohibits the use by the prosecution of a criminal defendant's post-arrest and post-Miranda silence for impeachment purposes." Downs v. Moore, 801 So.2d 906, 911 (Fla.2001) (citing Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)). Nor may post-Miranda silence be used as evidence of sanity. Garron v. State, 528 So.2d 353, 355 (Fla.1988) (citing Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986)). The major issue in this case was whether appellant was sane at the time he committed the crimes, and the victims testified that he appeared insane. The improper comments directly undercut that defense, and the trial court's instruction made appellant's choice to follow his attorney's advice sound rational and sane rather than insane. We accordingly reverse for a new trial.
Appellant also argues that, because he never touched the victim with the knife, there was insufficient evidence to prove aggravated battery, which is defined by section 784.045(1)(a)(2), Florida Statutes (2002), as follows:
(1) (a) A person commits aggravated battery who, in committing battery:
* * *
2. Uses a deadly weapon.
The issue of whether there must be a touching with the deadly weapon in order to prove aggravated battery by using a deadly weapon has not been decided by any of the cases cited by the appellant or the state. Appellant relies on three cases in which the defendant was holding a deadly weapon such as a knife or a firearm, but did not touch the victim with the knife or discharge the firearm, and the convictions were for attempted aggravated battery. F.N. v. State, 745 So.2d 1149, 1151 (Fla. 4th DCA 1999), Blandin v. State, 916 So.2d 969, 971 (Fla. 2nd DCA 2005), Dixon v. State, 823 So.2d 792, 794 (Fla. 2d DCA 2001).
*1028 Our supreme court has noted that the legislature has made a distinction between carrying a weapon and using a weapon in our statutes, in State v. Baker, 452 So.2d 927 (Fla.1984), and Owens v. State, 475 So.2d 1238 (Fla.1985). We conclude, based on these cases, that the element "uses a deadly weapon" in the aggravated battery statute means using the weapon to commit the touching that constitutes the battery. The trial court should have granted appellant's motion for judgment of acquittal on the aggravated battery charge.
We decline to rule on the argument raised by appellant that the court erred in excluding expert testimony pertaining to his insanity defense, because the specific argument he raises on appeal was not raised in the trial court. Reversed for a new trial.
POLEN and MAY, JJ., concur.