FILED
**United States Court of Appeals**
**Tenth Circuit**

**February 28, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

JAMES MICHAEL PHILLIPS,

    Petitioner - Appellant,

v.

GENTNER DRUMMOND, Attorney
General of the State of Oklahoma,

    Respondent - Appellee.

No. 24-5092
(D.C. No. 4:21-CV-00211-GKF-JFJ)
(N.D. Okla.)

_____

### ORDER DENYING CERTIFICATE OF APPEALABILITY[*]
_____

Before **PHILLIPS**, **BALDOCK**, and **ROSSMAN**, Circuit Judges.
_____

James Phillips, appearing pro se, seeks a certificate of appealability (COA) in order to challenge the district court's denial of his 28 U.S.C. § 2254 application for federal habeas relief. We deny his request and dismiss this matter.

I

On the evening of July 20, 2015, a man entered a cellphone store in Tulsa, Oklahoma, shortly before closing time. Over the course of the next hour, the man threatened the only employee on duty at gunpoint, demanded cash and electronics, took

---

[*] This order is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

personal information about the employee and her family, and threatened to return and kill her.

Approximately three weeks later, Mr. Phillips was apprehended shortly after an attempted robbery of a cellphone store in Derby, Kansas. Two cellphones were found inside Mr. Phillips's vehicle, both of which contained internet search histories and videos that linked the phones with the Tulsa robbery. A Derby police detective interviewed Mr. Phillips about the Derby robbery after Mr. Phillips waived his *Miranda*[1] rights. Mr. Phillips admitted that the two cellphones belonged to him.

A Tulsa detective learned about the Derby robbery and showed the victim of the Tulsa robbery a photographic lineup that included Mr. Phillips's photograph. The victim identified Mr. Phillips as the person who robbed her.

The Tulsa detective then traveled to Derby to examine the evidence from the Derby robbery. The Tulsa detective determined that three video recordings on one of the cellphones seized from Mr. Phillips's vehicle showed the cellphone store in Tulsa being "cased," once on July 17, 2015, and twice on the afternoon of July 20, 2015. The Tulsa detective also determined that the person recording the videos of the Tulsa cellphone store was driving a white 2007 Hyundai Santa Fe, the same car that Mr. Phillips used in the Derby robbery. Lastly, the Tulsa detective determined that the various items the robber used during the Tulsa robbery (e.g., a black backpack with gray cords that

---

[1] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

contained trash bags, gray duct tape, zip ties, scissors, disinfectant wipes) were all found in Mr. Phillips's car following the Derby robbery.

II

Mr. Phillips was charged in Tulsa County District Court with Robbery With a Firearm. The case proceeded to trial in January 2019. Mr. Phillips represented himself with standby counsel. The Tulsa detective who investigated the crime testified, in relevant part, that when he traveled to Derby following the Derby robbery, he spoke to Mr. Phillips, explained the facts of the Tulsa robbery, but that Mr. Phillips declined to make a statement in response. The Tulsa detective did not testify regarding whether Mr. Phillips received *Miranda* warnings during this encounter. Mr. Phillips testified in his own defense at trial. He admitted committing the Derby robbery, but claimed that his cousin committed the Tulsa robbery. According to Mr. Phillips, he decided, after seeing how much money his cousin made from the Tulsa robbery, that he would commit one robbery in Derby so that he could help his fiancé pay her rent. When the prosecutor cross-examined Mr. Phillips, he asked Mr. Phillips, if, after he was charged with the Tulsa robbery, he ever went to the police or the media to tell them he was innocent. Mr. Phillips did not object to this question. Instead, he testified that he did not go to the police or the media, but that he was nevertheless innocent of the Tulsa robbery. During closing arguments, the prosecutor stated, in relevant part, that Mr. Phillips never discussed his cousin or proclaimed his innocence until shortly before trial. Mr. Phillips did not object to this argument. The jury found Mr. Phillips guilty as charged. Mr. Phillips was sentenced to a twenty-three year term of imprisonment, to be served

3

consecutively to sentences imposed in Kansas state court in connection with the Derby robbery.

Mr. Phillips filed a direct appeal arguing, in part, that the prosecution violated his due process rights by using his post-*Miranda* silence for impeachment purposes. In April 2020, the Oklahoma Court of Criminal Appeals (OCCA) issued a summary opinion affirming Mr. Phillips's conviction and sentence. In doing so, the OCCA rejected Mr. Phillips's due process argument:

> In Proposition I, Appellant claims the prosecutor improperly referred to his invocation of his right to silence when a Tulsa detective attempted to interview him about the Tulsa robbery after his Kansas arrest. Because Appellant never objected to these references, review is for plain error. Plain errors are those errors which are obvious in the record, and which affect the substantial rights of the defendant—that is, the error affects the outcome of the proceeding. *Daniels v. State*, 2016 OK CR 2, ¶ 3, 369 P.3d 381, 383. Because the claim here implicates a constitutional right, if we find error, the burden shifts to the State to show the error was harmless beyond a reasonable doubt. *White v. State*, 2019 OK CR 2, ¶ 17 n.7, 437 P.3d 1061, 1068 n.7. There is no indication that Appellant's refusal to speak to the Tulsa detective about the Tulsa robbery was prompted by *Miranda* warnings; the record is silent as to whether such warnings were even given before the attempted interview. Cross-examination about Appellant's silence was therefore proper, where Appellant chose to testify. *Fletcher v. Weir*, 455 U.S. 603, 607 (1982); *Royal v. State*, 1988 OK CR 203, ¶ 13, 761 P.2d 497, 500. There was no error here. Proposition I is denied.

*Phillips v. State*, No. F-2019-190, slip op. at 3–4 (Okla. Crim. App. Apr. 23, 2020) (footnote omitted).

### III

Mr. Phillips initiated these federal proceedings in May 2021, by filing a pro se petition for writ of habeas corpus pursuant to § 2254. Mr. Phillips alleged in his petition,

as he did in his direct appeal, that his due process rights were violated when the prosecutor used his post-*Miranda* custodial silence at trial.

In July 2024, the district court issued an opinion and order denying Mr. Phillips's petition. In addressing the due process claim raised by Mr. Phillips, the district court began by identifying the clearly established federal law that applied to the claim. Specifically, the district court noted that "[i]n *Doyle v. Ohio*, 426 U.S. 610 (1976), the Supreme Court held that 'the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving Miranda warnings, violate[s] the Due Process Clause of the Fourteenth Amendment.'" R. vol. I at 364–65 (quoting *Doyle*, 426 U.S. at 619). The district court further noted that "[t]his principle 'rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial.'" *Id.* at 365 (quoting *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986)).

The district court in turn agreed with respondent that Mr. Phillips "failed to provide clear and convincing evidence" to "overcom[e] the presumption of correctness afforded the OCCA's factual finding" that the record was silent as to whether Mr. Phillips was advised of his *Miranda* rights before the Tulsa detective attempted to interview him. *Id.* at 366. Indeed, the district court noted that Mr. Phillips "appear[ed] to concede in his reply brief that he did not receive *Miranda* warnings during his encounter with" the Tulsa detective. *Id.* The district court also rejected Mr. Phillips's argument "that he received *Miranda* warnings . . . when he was interrogated regarding the Derby robbery" the day before the Tulsa detective attempted to talk to him. *Id.* In doing so, the

5

district court noted "this interrogation did not concern the Tulsa robbery and Phillips expressly waived his right to remain silent." *Id.* The district court also noted that Mr. Phillips "fail[ed] to point to any clearly established law applying *Doyle* where a suspect was silent after expressly waiving his *Miranda* rights" or "applying *Doyle* where *Miranda* warnings were provided during an interrogation for a separate crime." *Id.* at 367 (internal quotation marks omitted).

The district court therefore concluded "that the OCCA's adjudication of the claim was not contrary to, or an unreasonable application of, clearly established law, nor was it based on an unreasonable determination of the facts." *Id.* Finally, the district court concluded that "even if [Mr.] Phillips had demonstrated a constitutional error," he could not establish the prosecutor's use of his post-*Miranda* silence for impeachment purposes had a "substantial and injurious effect or influence in determining the jury's verdict," given the weight of the evidence presented against him at trial. *Id.* at 367–68 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 638 (1993)). The district court ordered the entry of final judgment and denied Mr. Phillips a COA.

Mr. Phillips has since filed a notice of appeal and an application for COA with this court.

IV

Mr. Phillips must obtain a COA in order for this court to review the district court's denial of his § 2254 application. *See* 28 U.S.C. § 2253(c)(1)(A). To do so, he must make "a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2). Because the district court denied his due process claim on the merits, this means that Mr. Phillips

6

"must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claim[] debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

There is no dispute the district court recognized and applied the proper standard of review that applies to § 2254 applications. Under that standard, a federal district court may grant habeas relief on a claim only if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).

The district court in turn correctly identified the clearly established federal law that applies to Mr. Phillips's claim, i.e., the Supreme Court's decisions in *Doyle* and *Wainwright*. Notably, Mr. Phillips acknowledges in his application for COA that his due process claim hinges on the principles outlined in *Doyle*. Mr. Phillips also acknowledges that in *Fletcher v. Weir*, 455 U.S. 603, 607 (1982), which the OCCA relied on in rejecting his due process claim, the Supreme Court held that "[i]n the absence of the sort of affirmative assurances embodied in the *Miranda* warnings," it does not "violate[] due process of law for a State to permit cross-examination as to post-arrest silence when a defendant chooses to take the stand."

Mr. Phillips argues that his case falls within the scope of *Doyle*, and is not controlled by *Fletcher*, because his "refusal to speak with the Tulsa detective occurred" the day "after he had been taken into custody" in connection with the Derby robbery "and

7

given his *Miranda* warnings." Appl. for COA at 10. In other words, Mr. Phillips effectively argues, as he did before the OCCA, that the *Miranda* warning he was given when he was questioned about the Derby robbery applied equally to his interview with the Tulsa detective the following day.

As the district court noted, however, Mr. Phillips fails to point to any clearly established law applying *Doyle* "where a suspect was silent after expressly waiving his *Miranda* rights" or "where *Miranda* warnings were provided during an interrogation for a separate crime." R. vol. I at 367 (internal quotation marks omitted). We therefore conclude reasonable jurists would not find debatable or wrong the district court's conclusion that Mr. Phillips failed to satisfy the standards outlined in § 2254(d) for obtaining federal habeas relief on the basis of his due process claim. Mr. Phillips has thus failed to establish his entitlement to a COA.

V

The application for COA is denied and the matter is dismissed.

Entered for the Court

Bobby R. Baldock
Circuit Judge