[Cite as *State v. Wallace*, 2026-Ohio-1657.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                     :

    Plaintiff-Appellee,                    :

                                                                       No. 115576

    v.                                                          :

KEMAR WALLACE,                              :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 7, 2026

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-24-690418-A

---

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Jeffrey M. Maver, Michael R. Wajda, and Liam Blake, Assistant Prosecuting Attorneys, *for appellee.*

Marein & Bradley, LLC, John T. Martin, and Mary Jo Tipping, *for appellant.*

TIMOTHY W. CLARY, J.:

{¶ 1} Defendant-appellant Kemar Wallace ("Wallace") appeals from his conviction for aggravated murder and related charges. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} On March 29, 2024, a Cuyahoga County Grand Jury indicted Wallace on one count of aggravated murder in violation of R.C. 2903.01(A), one count of murder in violation of R.C. 2903.02(A), one count of murder in violation of R.C. 2903.02(B), one count of felonious assault in violation of R.C. 2903.11(A)(1), one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of falsification in violation of R.C. 2921.13(A)(3). With the exception of the falsification charge, each charge carried one- and three-year firearm specifications.

{¶ 3} These charges arose from the March 22, 2023 murder of Darren Daniels ("Daniels"). Because the facts of the case are largely irrelevant to the instant appeal, we will provide only a brief summary of the evidence and testimony presented at trial.

{¶ 4} At the time of the shooting, Wallace was frequently staying with his then-girlfriend at her apartment in Lakeview Terrace, a Cuyahoga Metropolitan Housing Authority ("CMHA") property near Loop Drive and West 28th Street in Cleveland, Ohio. Daniels also lived in an apartment in Lakeview Terrace, and multiple friends and neighbors testified that Wallace and Daniels often spent time together.

{¶ 5} On the evening of March 22, 2023, multiple neighbors heard an argument and proceeded to hear and see Wallace shoot Daniels multiple times, including in the head. CMHA and Cleveland police responded and obtained a description of the suspect from various witnesses; while some of the witnesses knew

Wallace as "Brody" or "Kidd," they all described him as a black man with a strong Jamaican accent, and multiple witnesses subsequently identified Wallace in a photo array administered by law enforcement.

{¶ 6} Cleveland Police Detective Zara Hudson ("Detective Hudson") testified as to his investigation in this case, leading to Wallace's arrest on March 19, 2024. During the State's direct examination of Detective Hudson, it played a 55-second video of Detective Hudson's attempted interview with Wallace following the arrest. The video shows Detective Hudson introduce himself, and Wallace states, "You can't question me, what's up, I ain't even talking to nobody, I want a lawyer. . . ." Detective Hudson responds, "Okay, Kemar," to which Wallace responds, "I'm not Kemar, I'm Terrance, so lawyer."

{¶ 7} The video was played to the jury without objection, and the following exchange took place following the video:

> ASSISTANT PROSECUTING ATTORNEY: And what was the name of that individual in the interview room gave you?
>
> DETECTIVE HUDSON: Terrance McPherson.
>
> ASSISTANT PROSECUTING ATTORNEY: And how did you go about verifying whether or not that was Terrance McPherson or somebody else?
>
> DETECTIVE HUDSON: Well, I mean, obviously we knew or suspected that that was actually Kemar Wallace not Terrance McPherson.
>
> We then requested a global fingerprint scanner to be conveyed to the homicide unit where that was utilized right there in the interview room moments later after this recording and it was used and positively identifying him as Kemar Wallace, even though visually I could tell after investigating this individual for approximately a year that it was actually him but it was confirmed there by fingerprint scanner.

(Tr. 746-747.)

{¶ 8} Following the presentation of the State's case-in-chief, Wallace made a Crim.R. 29 motion for acquittal, and the trial court denied this motion. After the defense rested without introducing any additional evidence, Wallace presented a renewed Crim.R. 29 motion that was again denied.

{¶ 9} When the parties were addressing the exhibits that the State sought to admit, Wallace's counsel objected to the admission of State's exhibit No. 185, the 55-second video of Detective Hudson's interview with Wallace. Defense counsel argued that Detective Hudson had already testified that Wallace gave him a false name, and Wallace was questioned after he asked for a lawyer. In response, the State argued that the only communication after Wallace invoked his right to a lawyer came when Wallace voluntarily reengaged with Detective Hudson after the detective called Wallace "Kemar." The court admitted the 55-second video over Wallace's objection.

{¶ 10} On July 18, 2025, the jury returned a verdict of guilty on all counts and specifications. On August 12, 2025, the court sentenced Wallace to life in prison with parole eligibility after 26 years.

{¶ 11} Wallace appealed. He raises one assignment of error for our review:

The trial court erred in admitting Mr. Wallace's recorded statement invoking his right to counsel.

**Law and Analysis**

{¶ 12} In his sole assignment of error, Wallace argues that the trial court erred when it admitted his recorded statement to the police in which he invoked his

right to counsel. Specifically, Wallace refers to State's exhibit No. 185, the 55-second video recording of Detective Hudson's attempt to interview Wallace.

{¶ 13} Wallace argues that the admission of this evidence at trial deprived him of his constitutional right to remain silent and to invoke counsel and, moreover, the jury was left to infer that he must be guilty.

{¶ 14} The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself" and this provision applies to the states through the Fourteenth Amendment. *State v. Leach*, 2004-Ohio-2147, ¶ 11, citing *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). Once a person invokes their Fifth Amendment right to remain silent, the State cannot use the person's silence as substantive evidence of guilt in its case-in-chief. *State v. Bennett*, 2014-Ohio-160, ¶ 63 (9th Dist.), citing *Wainwright v. Greenfield*, 474 U.S. 284, 295 (1986). Further, "'a suspect's right to an attorney during questioning . . . is derivative of his right to remain silent.'" *Leach* at ¶ 13, quoting *Wainwright* at 298-299 (Rehnquist, J., concurring).

{¶ 15} The Ohio Supreme Court has held that a violation of the accused's Fifth Amendment rights is subject to harmless-error review. *State v. Powell*, 2012-Ohio-2577, ¶ 162, citing *State v. Thompson*, 33 Ohio St.3d 1, 4 (1987). Thus, assuming arguendo that the admission of the 55-second video violated Wallace's constitutional rights, it does not constitute reversible error if, based on the whole record, the evidence was harmless beyond any reasonable doubt. *State v. Perkins*,

2014-Ohio-752, ¶ 50 (3d Dist.), citing *State v. Zimmerman*, 18 Ohio St.3d 43, 45 (1985).

{¶ 16} Here, the evidence in question was limited in quantity and scope; the video was less than one minute long, did not include any reference to the homicide, and did not include any commentary on Wallace's invocation of his Fifth Amendment rights. Further, the evidence was admitted not to show that Wallace invoked his right to remain silent or his right to counsel, but rather to establish that he was guilty of falsification under R.C. 2921.13(A)(3), which makes it a crime to "knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made" where "the statement is made with purpose to mislead a public official in performing the public official's function." While the video showed Wallace invoke his right to counsel, this invocation was immediately followed by Wallace giving Detective Hudson a false name and declining to identify a photograph of himself. Thus, in the specific context of the trial in this case, the evidence was clearly intended to establish that Wallace committed the offense of falsification.

{¶ 17} Perhaps most significantly, there was overwhelming independent evidence to establish Wallace's guilt. Consequently, there is little chance that the contested evidence impacted the verdict or sentence in this case. *State v. Bryant*, 2014-Ohio-5535, ¶ 30 (4th Dist.), citing *State v. Powell*, 2012-Ohio-2577, ¶ 162. Specifically, multiple witnesses testified at trial that they frequently saw Wallace and Daniels together, that they heard Wallace and Daniels arguing right before the

shooting, and that they saw Wallace shoot Daniels and leave the scene. Therefore, any error in the admission of the video was harmless beyond a reasonable doubt. Wallace's sole assignment of error is overruled.

**{¶ 18}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIMOTHY W. CLARY, JUDGE

EILEEN T. GALLAGHER, P.J., and
EILEEN A. GALLAGHER, J., CONCUR