292 N.J. Super. 159 (1996)
678 A.2d 717
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
DAVID TITUS HYDE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted February 27, 1996.
Decided July 5, 1996.
*160 Before Judges PRESSLER, KEEFE and WEFING.
Susan L. Reisner, Public Defender, attorney for appellant (Mark Tabakman, Designated Counsel, on the brief).
*161 Deborah T. Poritz, Attorney General, attorney for respondent (John E. Adams, Jr., Deputy Attorney General, of counsel and on the brief).
David Titus Hyde, appellant, submitted a pro se supplemental letter brief.
The opinion of the court was delivered by PRESSLER, P.J.A.D.
Following a trial by jury, defendant David Titus Hyde was convicted of the related charges of third-degree burglary, N.J.S.A. 2C:18-2; fourth-degree unlawful possession of a weapon, a baseball bat, N.J.S.A. 2C:39-5d; second-degree possession of that weapon for the purpose of using it unlawfully, N.J.S.A. 2C:39-4d; third-degree aggravated assault with a deadly weapon, the baseball bat, N.J.S.A. 2C:12-1b(2); fourth-degree unlawful possession of a weapon, a hunting knife, N.J.S.A. 2C:39-5d; second-degree possession of that weapon for the purpose of using it unlawfully, N.J.S.A. 2C:39-4d; second-degree aggravated assault, N.J.S.A. 2C:12-1b(1); and first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3. For sentencing purposes, the judge merged the second-degree aggravated assault conviction into the attempted murder conviction, and on that conviction sentenced defendant to a twelve-year term. Defendant was also sentenced to a consecutive four-year term on the conviction of second-degree possession of the baseball bat and a concurrent four-year term on the burglary conviction. All other convictions were merged.
On challenging the judgment of conviction, defendant, by counsel, raises the following issues:
I. THE TRIAL COURT ERRED BY DENYING THE MOTION FOR A JUDGMENT OF ACQUITTAL.
II. THE TRIAL COURT ERRED BY DENYING THE MOTION FOR A MISTRIAL AND BY PRECLUDING THE DEFENDANT'S THERAPIST FROM TESTIFYING ABOUT HIS STATE OF MIND FOLLOWING THE INCIDENT OF MARCH 8, 1992.

*162 III. THE SUMMATION OF THE PROSECUTOR WAS INFLAMMATORY AND EXCEEDED THE BOUNDS OF PROPER ADVOCACY, THUS DENYING THE DEFENDANT A FAIR TRIAL. (Not Raised Below)
IV. THE INSTRUCTION TO THE JURY, IN ITS ENTIRETY, WAS CONFUSING, MISLEADING AND DEPRIVED THE DEFENDANT OF A FAIR TRIAL. (Partially Raised Below)
V. THE SENTENCE IMPOSED WAS UNJUST, INAPPROPRIATE AND MANIFESTLY EXCESSIVE.
In his pro se supplemental brief, defendant raises the following issues:
I. DEFENDANT WAS ENTITLED TO JURY INSTRUCTIONS ON AGGRAVATED ASSAULT AS THE LESSER CHARGE OF ATTEMPTED MURDER.
II. IT WAS FUNDAMENTALLY UNFAIR AND A TRANSGRESSION OF DUE PROCESS WHEN THE PROSECUTOR REFERRED TO DEFENDANT'S POST-ARREST, POST-MIRANDA WARNINGS SILENCE AS EVIDENCE OF HIS SANITY.
III. THE TRIAL COURT ERRED IN FAILING TO MERGE THE DEFENDANT'S CONVICTION AND SENTENCE FOR POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE INTO HIS CONVICTION AND SENTENCE FOR ATTEMPTED MURDER, BECAUSE THERE IS NO EVIDENCE THAT DEFENDANT HAD A BROADER UNLAWFUL PURPOSE.
IV. DEFENDANT WAS DENIED THE RIGHT TO DUE PROCESS AND A FAIR TRIAL WHEN THE TRIAL COURT IMPROPERLY ADMITTED HEARSAY EVIDENCE, ESPECIALLY IN THE ABSENCE OF ESSENTIAL AND MANDATED LIMITING INSTRUCTIONS.
V. DEFENDANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE ONE, PARAGRAPH SEVEN OF THE NEW JERSEY CONSTITUTION.
Having carefully reviewed the record in the light of these contentions, we are persuaded that the judgment of conviction must be reversed because of the prosecutor's improper references to defendant's post-arrest statements.
All of the charges against defendant arose out of a single episode. Defendant for some time had had a tempestuous relationship with Tracy Sinkbeil. In early March 1992, Sinkbeil told defendant that she was terminating their relationship in order to resume her off-again, on-again relationship with Hal Tiernan. *163 Several days later defendant went to Tiernan's apartment while Tiernan and Sinkbeil were there. He burst through the door brandishing a baseball bat and struck and shattered Tiernan's left shoulder with that weapon. He then stabbed Tiernan with a knife. Sinkbeil intervened, attempting to wrest the knife away from defendant. Finally, defendant let the knife go and ran away. Tiernan survived the attack with serious and permanent injuries.
Defendant did not deny the assault. His defense was mental disease or defect. Defendant had in fact been in therapy for about a year prior to the episode and at trial relied on his expert's opinion that he suffered from obsessive-compulsive disorder, multiple personality and mixed personality. The jury evidently rejected the defense in finding defendant guilty as charged.
Our concern with this conviction stems from what we regard as the prosecutor's violation of defendant's constitutional right to remain silent. These are the facts that culminated in the prosecutor's offending remarks to the jury.
Defendant was arrested shortly after the attack. The arresting officer gave him Miranda[1] warnings before placing him in the squad car and again when they arrived at police headquarters. The officer testified that defendant remained silent on the way to the police station. When the rights were there repeated, however, defendant responded, "It's in my best interest not to say anything." He did not, the officer testified, say anything further when presented with the arrest warrants that had been prepared. The officer's testimony regarding these matters was admitted without objection, as well as other testimony respecting defendant's apparent coherence and rationality following his arrest.
In his summation, the prosecutor, referring to that testimony in the context of defendant's diminished capacity defense, said to the jury:

*164 He understands his rights. What does he say? Is this a person who doesn't know what's going on?
The prosecutor went on to say:
All the officers [naming the four involved in the arrest and booking] say he's acting normally and he knows it. It's in my best interests not to say anything. That's a person who is acting knowingly and intentionally as he did from the beginning to the end. When advised of the charges, he would have said, Who, me? Did I do that? Oh, my God, I'm so sorry for what I've done. What's his reaction? No reaction whatsoever. He knew what he did.
It is well-settled that the constitutional right against self-incrimination precludes the State from any trial tactic designed to suggest to the jury that defendant's guilt may be inferred from his silence. Moreover, as the United States Supreme Court made clear in Doyle v. Ohio, 426 U.S. 610, 618-619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91, 98 (1976), the State, as a matter of fundamental fairness, must honor the implicit assurance of the Miranda warnings that "silence will carry no penalty." Consequently, a defendant's failure to have given an exculpatory statement upon or after arrest is not a matter that the prosecutor is at liberty to prove or, a fortiori, to comment upon. Ibid. See also State v. Deatore, 70 N.J. 100, 114-116, 358 A.2d 163 (1976).
In Wainwright v. Greenfield, 474 U.S. 284, 106 S.Ct. 634, 88 L.Ed.2d 623 (1986), the Supreme Court applied the Doyle analysis in circumstances strikingly similar to those here. In Wainwright, the defendant had responded several times to Miranda warnings by saying he understood his rights and wanted to talk to an attorney before saying anything else. The officers testified to that fact. Defendant relied at trial on an insanity defense, claiming to be a paranoid schizophrenic. In his summation, the prosecutor said:
He goes to the car and the officer reads him his Miranda rights. Does he say he doesn't understand them? Does he say "What's going on?" No. He says "I understand my rights. I do not want to speak to you. I want to speak to an attorney." Again an occasion of a person who knows what's going on around his surroundings, and knows the consequences of his act. Even down  as going down [to] the car as you recollect Officer Pil[i]fant said he explained what Miranda rights meant and the guy said  and Mr. Greenfield said "I appreciate that, thanks a lot for telling me that." And here we are to believe that this person didn't know what he was doing at the time of the act, and then even down at the station, *165 according to Detective Jolley  He's down there. He says, "Have you been read your Miranda rights?" "Yes, I have." "Do you want to talk?" "No." "Do you want to talk to an attorney?" "Yes." And after he talked to the attorney again he will not speak.
[Id., 474 U.S. at 299-300, 106 S.Ct. at 643, 88 L.Ed.2d at 635.]
The Supreme Court sustained the reversal of this conviction on Doyle grounds, holding that the implied promise of the Miranda warnings may not be breached "by using silence to overcome a defendant's plea of insanity." The Court said:
In both situations, the State gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the State then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.
[Id., 474 U.S. at 292, 106 S.Ct. at 639, 88 L.Ed.2d at 631.]
The New Jersey Supreme Court has fully subscribed to the Wainwright dictate. Thus, in State v. Oglesby, 122 N.J. 522, 585 A.2d 916 (1991), although the conviction was reversed on other grounds, the Court noted the prosecutor's use of defendant's post-arrest silence to impugn his insanity defense. There, too, the defendant had invoked his right to counsel after being given Miranda warnings. The prosecutor, in his summation, said:
Can there be any better example of [the defendant's] rationality and state of mind, of his appreciating right from wrong, that when he gets to the crucial issue, * * * that is when he said, "I know I have rights because I gave them up and I know I have rights because I take them back at this time."
We don't offer that to you in any way to comment upon whether or not that is an improper thing to do. * * * It's only offered to you to show his state of mind, his ability to choose intelligently and exercise those rights.
[Id. at 534-535, 585 A.2d 916.]
The Court, in cautioning against the elicitation of that evidence or comment upon it at trial, said:
In Wainwright v. Greenfield, the United States Supreme Court held that under the fourteenth amendment of the United States Constitution it is "fundamentally unfair for [a] prosecutor to [use defendant's] post-arrest, post-Miranda warnings silence as evidence of his sanity." 474 U.S. 284, 295, 106 S.Ct. 634, 641, 88 L.Ed.2d 623, 632 (1986). Here, the prosecutor's attempt to disparage defendant's insanity defense by referring to the invocation of his right to silence and to an attorney contravened that holding. On remand, the prosecutor must not suggest explicitly *166 or implicitly that defendant's silence evidenced his sanity at the time of the homicide.
[Id. at 535, 585 A.2d 916.]
As we understand the State's response to the Wainwright argument here, it does not undertake to excuse the prosecutor's remarks but rather to urge that they did not constitute plain error. The State argues that proof of defendant's guilt was overwhelming and that in any event, he had not pleaded insanity but only mental disease and defect, a defense negating a purposeful but not a reckless element of the offenses charged. We are constrained, however, to reject that contention. As we have noted, defendant's commission of the crimes was not in question. Only his mental state was. Moreover, the most serious of the crimes, attempted murder, as well as a number of the other crimes, included purposefulness as the mental element. In these circumstances, we are persuaded that any impugnment of the mental impairment defense had a capacity to have deprived defendant of a fair trial on all the charges even if we were to hold that so clear an infringement by the State of defendant's constitutional rights was not prejudicial per se.
We are aware that defense counsel, by his cross-examination of State's witnesses, also elicited proofs respecting defendant's post-arrest silence and demeanor. We are, however, persuaded that counsel's conduct cannot be regarded as a strategic decision of which defendant may not complain. As Justice (then Judge) Handler made clear in State v. Harper, 128 N.J. Super. 270, 278, 319 A.2d 771 (App.Div.), certif. denied, 65 N.J. 574, 325 A.2d 708 (1974), "although brought about by defendant, there are errors of such magnitude that they trench directly upon the proper discharge of the judicial function." Such errors, he concluded, "may be cognizable on appeal as plain error notwithstanding their having been precipitated by a defendant at the trial level." Ibid. Here, defense counsel did not precipitate the error, but was responding to the prosecutor's line of inquiry on direct examination. Moreover, impingement upon defendant's constitutional *167 right to remain silent qualifies, in our view, as an error of sufficient magnitude to overcome the usual rule of charging defendant with the consequences of attorney strategy. We further note that Harper preceded the remediable ineffective assistance of counsel rule articulated by Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, reh'g. denied, 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), and embraced by the New Jersey Supreme Court in State v. Fritz, 105 N.J. 42, 58, 519 A.2d 336 (1987). We think it plain that the Harper rule is, conceptually, simply another way of expressing at least one application of the Strickland rule.
Because we have concluded that defendant is entitled to a new trial, we need not address the other issues he raises except to comment on those that may arise again. Defendant argues that the trial judge erred in not permitting his therapist, Thomas Brownback, a psychologist, from testifying as an expert and in excluding his testimony regarding defendant's reflections about the event that he communicated to the therapist during therapy after the event. We note first that as a result of the tenor of the State's cross-examination and, in part, defendant's re-direct examination, it appears that most of defendant's testimonial proffer, including Brownback's opinion, was ultimately admitted although in rather unorthodox sequence and presentation. We assume that if, on the retrial, he is again offered as a witness by the defense, the court will determine, prior to his testimony, the scope of his expertise and the specific matters, if any, on which he is qualified to give his opinion and as to which opinion testimony is admissible. We add that we see no impediment to his qualification by reason of the fact that he is not a medical doctor and does not hold a doctorate degree. He holds a master's degree in psychology and is an experienced therapist and therapy supervisor. He has been a licensed psychologist for over fourteen years. The extent of his academic training goes to weight  not qualification.
With respect to the sentence, we note that if defendant is again convicted, he will have to be resentenced. The issue of merger *168 would then have to be readdressed. The court should give careful consideration to the merger of each of the fourth-degree weapons offenses into the cognate third-degree weapons offense and then the merger of the third-degree offenses into the aggravated assault or the attempted murder.
We find no merit in defendant's claim that he was entitled to an acquittal of Count 8 of the indictment (second-degree aggravated assault of Tiernan). R. 2:11-3(e)(2). Nor do we find merit in the challenge to the jury instructions. In any event, defendant will have the opportunity to submit both his requests to charge and his objections to the court's charge at the retrial. The prosecutor's summation, other than the Wainwright problem, was unexceptionable. Finally, we are satisfied that the ineffective assistance of counsel arguments that defendant now raises have been rendered moot by our reversal of the conviction.
The judgment of conviction is reversed and we remand for a new trial.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).