OPINION
{¶ 1} Defendant, A.D. Armstrong, appeals from his conviction and sentence for felonious assault.
 {¶ 2} On June 6, 2004, Ronald Peters was shot in the head in broad daylight while he sat in his car in the parking lot of Gebhardt's Market on Gilsey Avenue in Dayton. As a result of the injuries he sustained, Peters cannot remember anything about the shooting or why he was even in that parking lot. Two eyewitnesses who were at the store at the time, Darryl Scott and his fiancé Mender Moore, saw a man climb into Peters' car through the open driver's side front window, heard a gunshot, and then watched as the man emerged from Peters' car and then walked right past them, complaining about people who try to rip him off.
 {¶ 3} Three days later, after Scott and Moore had notified police that they witnessed this crime, they were each shown a photographic lineup and each identified Defendant as the man they saw climb into Peters' car. When Defendant was interviewed by Detective Galbraith six days after the shooting, Defendant admitted that he did climb into Peters' car via the open window because Peters was trying to drive away without paying for drugs Defendant had sold him. Defendant claimed, however, that another drug dealer who was in that parking lot, Mike Jeeter or Jetter, also entered Peters' car and is the person who shot Peters. Defendant also told Detective Galbraith that being in the drug business he needed a gun, and that people who try to steal dope get shot. Although Scott and Moore observed another man in the parking lot, they were positive that only Defendant had entered Peters' car.
 {¶ 4} Defendant was indicted on two counts of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), with a firearm specification attached to each count, R.C. 2941.145, and one count of having weapons while under a disability in violation of R.C. 2923.13(A)(3). Defendant filed motions to suppress his statements and the pretrial identification evidence. The trial court overruled those motions following hearing.
 {¶ 5} Following a jury trial Defendant was found guilty of both counts of felonious assault and the accompanying specifications, but the jury was unable to reach a verdict on the weapons under disability charge. The trial court merged the two felonious assault counts and sentenced Defendant to six years in prison. The court also merged the firearm specifications and imposed an additional and consecutive three years term, for a total sentence of nine years.
 {¶ 6} Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 7} "THE TRIAL COURT ERRED BY ALLOWING MENDER MOORE AND DARRYL SCOTT TO TESTIFY AGAINST DEFENDANT AT HIS TRIAL AS BEING UNCONSTITUTIONAL AND VIOLATING OHIO CRIMINAL RULE 12(B)(3).
 {¶ 8} Defendant argues that the trial court erred when it overruled his motion to suppress Scott and Moore's pretrial identification of him because the procedure used by police, a photographic lineup, was unfairly suggestive and their resulting identification of him was therefore unreliable.
 {¶ 9} In reviewing a trial court's decision on a motion to suppress, the Court of Appeals is required to accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. Accepting those facts as true, the Court of Appeals must then independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. State v.Satterwhite (1997), 123 Ohio App.3d 322.
 {¶ 10} The facts found by the trial court are as follows:
 {¶ 11} "The indictment alleges that on June 6, 2004, Ronald Peters was injured by a deadly weapon. The evidence revealed that on that date, Mender Moore and Darryl Scott were sitting in Scott's pickup truck in the vicinity of a market on Gilsey Avenue in Dayton, Ohio. Moore and Scott are fiancees, they live together, and they were preparing to enter the market to shop. At that location they observed a `black guy' outside a vehicle with a `white guy' in the vehicle talking to him. The `black guy' gave the `white guy' something and the `white guy' started to leave. The `black guy', said something to the effect, `Are you going to try to take off my stuff?'. The `black guy' then jumped head first into the driver side window so that only his legs were protruding. The witnesses heard a noise and the `black guy' then walked away from the scene and passed directly in front of the pickup truck in which the two (2) witnesses were seated. The `white guy' was bleeding and said he was shot.
 {¶ 12} "Michael D. Galbraith is a Homicide Investigator for the City of Dayton who was assigned the investigation of the shooting on Gilsey Avenue. He received a `Crime Stoppers' anonymous tip, and a separate individual tip, that A.D. Armstrong was involved in the altercation. Galbraith located a photograph of Armstrong on the police department computer and he constructed a six (6) photograph array of like and similar subjects. The computer randomly arranged the six (6) photographs with the Defendant being placed in position No. 1 for the photospread (State's Exhibit 3).
 {¶ 13} "Detective Galbraith contacted the witnesses Mender Moore and Darryl Scott. Galbraith had previously told Scott that he may be asked to review a photospread if Galbraith was able to develop a suspect. No such statement had been made to Moore.
 {¶ 14} "Both Mender Moore and Darryl Scott are employed by Children's Medical Center, although at different hours. On June 9, 2004, Galbraith met with Mender Moore at Children's Medical Center in a private room. There, Galbraith read verbatim the instructions on the original color copy of State's Exhibit 3. Ms. Moore reviewed the photographs for two to three minutes. She narrowed down her choices to number 5 or 1 and then selected 1. She memorialized she (sic) selection by placing her initials next to the photograph and at the witness signature line of a separate photocopy (State's Exhibit 1). Ms. Moore was not told who to pick and she was not influenced in her decision by Detective Galbraith. Galbraith instructed her not to speak about her selection to anyone.
 {¶ 15} "Later that same day, Galbraith met with Darryl Scott in the same room. Galbraith read the instructions as written. Scott reviewed the photographs and then selected photograph number 1, the Defendant. Scott memorialized his selection by initialing a photocopy of the array at the photograph and on the witness signature line (State's Exhibit 2). Galbraith did not suggest to Scott who to pick."
 {¶ 16} When a witness has been confronted with a suspect before trial, due process requires a court to suppress the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. State v. Murphy, 91 Ohio St. 3d 516, 534, 2001-Ohio-112. The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. State v. Wills
(1997), 120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id., at 325; State v. Beddow
(March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 17} In arguing that the photographic lineup used in this case was unduly suggestive, Defendant asserts only that the six African-American males depicted had different builds and different hairstyles. The trial court concluded that the photospread lacks any suggestiveness because the six subjects depicted are all young African-American males with roughly the same build and facial hair. Moreover, none of the clothing is unique enough to highlight any individual. We agree.
 {¶ 18} Detective Galbraith testified at the suppression hearing regarding the computerized system he used to create the photographic lineup in this case. After receiving a Crime Stoppers tip that Defendant was involved in the shooting, Detective Galbraith obtained a photograph of Defendant from jail records. Using the physical features and identifiers in that photograph, Detective Galbraith entered that information into the police computer which generates photographs of a number of individuals similar in appearance to Defendant. Detective Galbraith then selected from the photos generated by the computer the ones that he thought most closely resembles Defendant in appearance. The computer then randomly arranges the photos selected in a six picture photospread.
 {¶ 19} We have previously held that this computerized method of creating photospreads avoids most potential unfairness and almost any claim that the lineup was suggestive. State v.Beckham (July 18, 2003), Montgomery App. No. 19544, 2003-Ohio-3837. That is true in this case. There is simply nothing about the photographic lineup in this case, State's Exhibit 3, that causes Defendant photograph to stand out more than the others or would entice the eyewitnesses to choose Defendant's photograph over the others. Moreover, the manner in which this photographic lineup was presented to the eyewitnesses was not suggestive. Detective Galbraith read verbatim to each eyewitness the instructions for viewing the photospread, and Galbraith did not in any way influence either eyewitness as to who to select. The photospread was presented separately, at different times, to each witness. Both Scott and Moore testified that they did not discuss their identifications with each other.
 {¶ 20} This photographic lineup and the manner in which it was presented to the eyewitnesses was not unduly suggestive. Accordingly, there is no need to further inquire into the reliability of the identifications by Scott and Moore. Beckham,supra. The trial court did not err in refusing to suppress the pretrial identifications by these witnesses.
 {¶ 21} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 22} "THE TRIAL COURT ERRED BY CONVICTING DEFENDANT WHEN DEFENDANT HAD INEFFECTIVE ASSISTANCE OF COUNSEL THROUGHOUT THE CASE."
 {¶ 23} In order to demonstrate ineffective assistance of trial counsel a defendant must demonstrate that counsel's performance was deficient and fell below an objective standard of reasonable representation, and that Defendant was prejudiced by counsel's performance; that is, there is a reasonable probability that but for counsel's unprofessional errors, the result of Defendant's trial or proceeding would have been different.Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052,80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136.
 {¶ 24} Trial counsel is entitled to a strong presumption that his conduct falls within the wide range of reasonable assistance.Id. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel.Id.
 {¶ 25} Defendant complains that his counsel performed in a deficient manner because he failed to seek severance of the charges for trial. The law favors joinder of multiple offenses in a single trial if the offenses charged are of the same or similar character, or are based on the same act or transaction. Crim.R. 8(A); State v. Lott (1990), 51 Ohio St.3d 160. An accused may move to sever the charges under Crim.R. 14, but he has the burden to affirmatively demonstrate that his rights will be prejudiced by the joinder. Lott, supra. A showing by the State that the evidence relating to each crime is simple and direct negates any claims of prejudice and renders joinder proper. Lott, supra;State v. Roberts (1980), 62 Ohio St.2d 170; State v. Torres
(1981), 66 Oho St.2d 340.
 {¶ 26} All three of these charges arose out of a single shooting. The State's proof showed that Defendant shot Ronald Peters in the head as Peters sat in his car, which caused serious physical harm to Peters, R.C. 2903.11(A)(1), and that Defendant had caused physical harm to Peters by means of a deadly weapon, R.C. 2903.11(A)2). At that time Defendant was prohibited from having a firearm because he had previously been convicted in 1998 of possessing cocaine in Montgomery County Common Pleas Court Case No. 1998-CR-640. R.C. 2923.13 (A)(3). The evidence as to each charge was simple and direct, and therefore joinder was proper. There is no reasonable possibility that a motion for severance of the charges, if one had been filed, would have succeeded. Therefore, defense counsel did not perform in a constitutionally deficient manner by failing to file such a motion.
 {¶ 27} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 28} "THE TRIAL COURT ERRED IN SENTENCING THE DEFENDANT TO PRISON WITHOUT FIRST CONSIDERING IMPOSITION OF EITHER A FINE OR A COMMUNITY CONTROL SANCTION AS THE SOLE SANCTION IN ACCORDANCE WITH O.R.C. § 2929.13(A)."
 {¶ 29} Defendant argues that his sentence is contrary to law because the trial court failed to state on the record that it had considered the appropriateness of imposing a financial sanction or a sanction of community service as the sole sanction for the offense, in accordance with R.C. 2929.13(A).
 {¶ 30} R.C. 2929.13(A) provides in relevant part:
 {¶ 31} "If the offender is eligible to be sentenced to community control sanctions, the court shall consider the appropriateness of imposing a financial sanction pursuant to section 2929.18 of the Revised Code or a sanction of community service pursuant to section 2929.17 of the Revised Code as the sole sanction for the offense."
 {¶ 32} Neither this provision nor R.C. 2929.19 requires a trial court to orally state on the record or make any finding that it considered the appropriateness of imposing a financial sanction or a sanction of community service as the sole sanction for the offense. All that is required is that the court consider those options, if the offender is eligible to be sentenced to community control.
 {¶ 33} Defendant was convicted of the firearm specifications, R.C. 2941.145, that were attached to each charge of felonious assault. A three year prison sentence was mandatory. Therefore, Defendant was clearly not eligible to be sentenced to community control. R.C. 2929.14(D)(1)(a); R.C. 2941.145. Accordingly, R.C.2929.13(A) does not apply and the trial court was not obligated to consider the appropriateness of imposing a financial sanction or a sanction of community service as the sole sanction for this offense.
 {¶ 34} The third assignment of error is overruled.
FOURTH ASSIGNMENT OF ERROR
 {¶ 35} "THE TRIAL COURT ERRED IN CONVICTING AND SENTENCING DEFENDANT FOR FELONIOUS ASSAULT BASED ON INSUFFICIENT EVIDENCE AS A MATTER OF LAW."
FIFTH ASSIGNMENT OF ERROR
 {¶ 36} "DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 37} In these related assignments of error Defendant argues that his conviction is not supported by legally sufficient evidence and is against the manifest weight of the evidence.
 {¶ 38} Defendant was convicted of felonious assault in violation of R.C. 2903.11(A)(1) and (A)(2), which provide:
 {¶ 39} "(A) No person shall knowingly do either of the following:
 {¶ 40} "(1) Cause serious physical harm to another or to another's unborn;
 {¶ 41} "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."
 {¶ 42} A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. Thompkins, supra. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 43} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 44} Defendant argues that his convictions were based upon the identifications made by Darryl Scott and Mender Moore, that those identifications were unfairly suggestive and conducive to mistaken identification, and that without those impermissibly suggestive identifications the evidence was not sufficient to convict Defendant.
 {¶ 45} We have already concluded in overruling Defendant's first assignment of error that the pretrial identifications by Scott and Moore were not unfairly suggestive. Both Scott and Moore made independent identifications of Defendant at trial based upon their memory of what the shooter looked like.
 {¶ 46} Viewing the evidence presented in a light most favorable to the State, a rational trier of facts could find all of the essential elements of the felonious assault charges proved beyond a reasonable doubt. Defendant's conviction is supported by legally sufficient evidence.
 {¶ 47} A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive. State v. Hufnagle (Sept. 6, 1996), Montgomery App. No. 15563, unreported. The proper test to apply to that inquiry is the one set forth in State v. Martin (1983),20 Ohio App.3d 172, 175:
 {¶ 48} "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Accord: State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52.
 {¶ 49} The credibility of the witnesses and the weight to be given to their testimony is a matter for the trier of facts to resolve. State v. DeHass (1967), 10 Ohio St.2d 230. In Statev. Lawson (August 22, 1997), Montgomery App. No. 16288, we observed:
 {¶ 50} "[b]ecause the factfinder . . . has the opportunity to see and hear the witnesses, the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility. The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." Id., at p. 4.
 {¶ 51} This court will not substitute its judgment for that of the trier of facts on the issue of witness credibility unless it is patently apparent that the trier of facts lost its way in arriving at its verdict. State v. Bradley (Oct. 24, 1997), Champaign App. No. 97-CA-03.
 {¶ 52} Defendant's argument that his conviction is against the manifest weight of the evidence is based upon the same faulty premise as his argument that his conviction is not supported by sufficient evidence: That his conviction was based upon identifications by Scott and Moore that were tainted by undue suggestiveness and conducive to mistaken identification. We have already determined that contention lacks merit.
 {¶ 53} The testimony of Scott and Moore, if believed, along with Defendant's admissions he made to Detective Galbraith is clearly sufficient to prove that Defendant shot Peters inside Peters' car. The jury did not lose its way simply because it chose to believe the State's witnesses rather than Defendant's statement to police that another drug dealer, not him, shot Peters.
 {¶ 54} In reviewing this record as a whole we clearly cannot say that the evidence weighs heavily against a conviction, that the trial court lost its way in choosing to believe the State's witnesses, which it was entitled to do, or that a manifest miscarriage of justice has occurred. Defendant's conviction is not against the manifest weight of the evidence.
 {¶ 55} The fourth and fifth assignments of error are overruled. The judgment of the trial court will be affirmed.
Brogan, J. And Fain, J., concur.