[Cite as *State v. Forbus*, 2011-Ohio-4287.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

STATE OF OHIO                                           :

                                        :         Appellate Case No.   24061

        Plaintiff-Appellee          :

                                          :         Trial Court Case No. 2009-CR-3152

v.                                     :

                                          :

RICHARD FORBUS, JR.         :         (Criminal Appeal from
                                          :          Common Pleas Court)

        Defendant-Appellant      :

                                          :

. . . . . . . . . . .

## O P I N I O N

Rendered on the 26th day of August, 2011.

. . . . . . . . .

MATHIAS H. HECK, JR., by KIRSTEN A. BRANDT, Atty. Reg. #0070162, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
        Attorneys for Plaintiff-Appellee

JAY A. ADAMS, Atty. Reg. #0072135, 424 Patterson Road, Dayton, Ohio 45419
        Attorney for Defendant-Appellant

. . . . . . . . .

HALL, J.

{¶ 1} Richard Forbus appeals from his conviction and sentence on charges of felonious assault, improperly discharging a firearm at or into a habitation, and a related firearm specification.

{¶ 2} Forbus advances three assignments of error on appeal. First, he contends the trial

court erred in overruling his objection to the prosecutor's use of his pre-arrest silence as substantive evidence of guilt. Second, he alleges that he received constitutionally ineffective assistance of trial counsel. Third, he challenges the legal sufficiency of the evidence to support his convictions.

{¶ 3} The present appeal stems from an incident that occurred outside the home of Randy Hamblin on the evening of September 23, 2009. While Hamblin was standing in his own front yard, two males and a female pushing a stroller walked by on the sidewalk. As they did, Hamblin's dog began barking at them. Although the dog was fenced in the front yard, the barking frightened the female, who began arguing with Hamblin. A neighbor, Jeremiah Lyons, overheard the argument and began yelling at the female from his yard across the street. The female approached Lyons and confronted him on his property. When she threatened violence, the two males, one of whom later was identified as Forbus, pushed the stroller across the street and persuaded her to leave. As she was leaving, the female threatened that someone would return to "shoot up" the neighborhood.

{¶ 4} After the female departed, Hamblin retrieved a handgun from his house and placed it in a hip holster. Hamblin's son Aaron arrived approximately thirty minutes later and heard about the incident. The two Hamblins stood outside along with Lyons, who had arrived from across the street, and another neighbor, John Vanderpool. While the men were talking, Forbus reappeared and approached them on the sidewalk. Lyons testified at trial that he saw Forbus pull a handgun from his waistband. Upon seeing the gun, Lyons exclaimed, "He's got a gun, he's got a gun." Prosecution witnesses testified that Forbus held the gun sideways and fired it multiple times at the men. Aaron Hamblin grabbed Randy Hamblin's handgun and

returned fire, striking Forbus in the neck.

{¶ 5} Police responding to the scene located Forbus two or three blocks away, bleeding from the neck. Forbus refused to cooperate and would not tell the officers what had happened or who had shot him. He refused to answer questions, providing only his name, date of birth, and Social Security number. Forbus continued to be uncooperative as he was placed in an ambulance. At the hospital, he again refused to tell police anything. In the mean time, other officers spoke to witnesses who stated that Forbus had fired first and that Aaron Hamblin had returned fire. Police recovered the gun Aaron Hamblin had fired and four .40 caliber spent shell casings from it. They were unable to find Forbus's gun or any other shell casings in the area. Police did find a nine-millimeter bullet, however, lodged in the siding of a front porch three houses from Randy Hamblin's residence. Randy Hamblin subsequently identified Forbus as the shooter in a photo lineup. After a jury found Forbus guilty on several charges, the trial court merged them into the offenses set forth above and imposed an aggregate ten-year prison term. This appeal followed.

{¶ 6} In his first assignment of error, Forbus contends the trial court erred in overruling his objection to the prosecutor's use of his pre-arrest silence as substantive evidence of guilt. This argument concerns testimony presented during the State's case-in-chief from the police officers who spoke to Forbus immediately after the shooting.

{¶ 7} The first officer, Brian Spencer, testified that he responded to a dispatch about the incident. When he reached the area, he saw Forbus standing near an intersection and bleeding from the neck. At that time, Spencer had no "solid information" about what had happened. The officer considered Forbus a potential victim and asked what had happened,

where it had happened, and who had shot him. (Trial transcript at 352-353, 356). Forbus responded by turning away and not answering any of the questions. (Id. at 354, 357).

{¶ 8} Officer Spencer's partner, Michael Dorsten, also testified for the State. Officer Dorsten testified that he too considered Forbus a victim. He described Forbus as being uncooperative. Dorsten stated that Forbus would not answer any questions and only gave his name, date of birth, and Social Security number. (Id. at 366-367). A third officer, Christopher Cornwell, provided similar testimony. When Cornwell approached Forbus in the back of an ambulance, Forbus gave his name and then "refused to talk." (Id. at 376). Finally, a fourth officer, Willie Hooper, testified about his interaction with Forbus at the hospital. Several times, Forbus refused to say anything when Hooper asked who had shot him and what had happened. (Id. at 345).

{¶ 9} During closing arguments, the State used Forbus's silence against him as evidence of guilt. The prosecutor stated:

{¶ 10} "* * * Ladies and gentlemen, [this] is an absolutely perfect example of an individual acting with a guilty conscience. Because an innocent person who's been shot wrongfully says to the police as soon as they show up, oh, my God, I've been shot, I'll tell you exactly who did this. I'll tell you exactly where they are. I'll look at photographs. I'll look at mug shots. I'll look at houses. I'll tell you exactly what happened. An innocent person doesn't say my name is Richard Forbus, Jr., here's my date of birth, here's my social security number, I don't want anything to do with you.

{¶ 11} "* * *

{¶ 12} "* * * If you're an innocent victim who's just been shot in the neck, you don't

have anything to hide. And yet when the very people who are sworn to protect us arrive, tell us what happened, how can we help? Like a prisoner of war, he says his name, rank, and serial number. * * *." (Id. at 487, 509).

{¶ 13} On appeal, Forbus contends the State's use of his pre-arrest silence against him violated the Fifth Amendment to the United States Constitution, which provides that "no person shall be compelled in any criminal case to be a witness against himself." It is well settled that the Fifth Amendment's protections apply to questioning outside of the courtroom when the information sought reasonably could lead to a criminal prosecution. See, e.g., *Cincinnati v. Bawtenheimer* (1992), 63 Ohio St.3d 260, 264-266. It is equally true that the Fifth Amendment protects a defendant from having his pre-arrest silence used against him as substantive evidence of guilt. In *State v. Leach*, 102 Ohio St.3d 135, 2004-Ohio-2147, the Ohio Supreme Court held that the prosecution's use of pre-arrest silence as evidence of a defendant's guilt "substantially subverts the policies behind the Fifth Amendment privilege against self-incrimination and is not a legitimate governmental practice." Id. at ¶37.

{¶ 14} In reaching its conclusion, the *Leach* court recognized that "[u]se of pre-arrest silence in the state's case-in-chief would force defendants either to permit the jury to infer guilt from their silence or surrender their right not to testify and take the stand to explain their prior silence." Id. at ¶31. Moreover, "in the face of police questioning, the suspect might remain silent for innocent reasons: fear of police, threats from another person not to speak with police, embarrassment about a relationship or course of conduct that is not necessarily criminal, or the belief that explaining his or her conduct is futile." Id. at ¶34. The *Leach* court saw "no reason to permit individuals to remain silent only when they have been

specifically told by police of their right to do so." Id. at ¶35.

{¶ 15} While not disputing the rule articulated in *Leach*, the State insists that Forbus's case is distinguishable. It notes that the defendant in *Leach* was a suspect when police questioned him. Conversely, the record contains testimony that Forbus was not a suspect at the time he refused to answer questions. The State insists that this distinction is critical and that many of the concerns identified in *Leach* are not implicated when the subject of police questioning is not a suspect.

{¶ 16} The application of *Leach* to the unique facts of this case is not certain. Indeed, even the *Leach* court pointed out that the United States Supreme Court has not specifically addressed whether pre-arrest silence can be used as substantive evidence of guilt. Moreover, the United States Circuit Courts are split on the issue. The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." Arguably, there is no compulsion and there is no "criminal case" when the person being questioned by police is questioned as, and considered to be a victim. The evidence in the record supports the conclusion that Forbus was a victim rather than a suspect at the time he was questioned by the various officers. There is also the question of whether Forbus's supply of only his name, date of birth and Social Security number was a clear exercise of his Fifth Amendment right to remain silent. In *Leach,* the ultimate defendant was not only definitely a suspect, but Leach's failure to appear at the police station for an interview was coupled with the message that he wanted to speak to an attorney before speaking to the police. "'A suspect's right to an attorney during questioning * * * is derivative of his right to remain silent * * *.' *Wainwright v. Greenfield* (1986), 474 U.S. 284,

298–299, 106 S.Ct. 634, 88 L.Ed.2d 623 (Rehnquist, J., concurring)." *Leach*, at ¶13. On the other hand, denying Fifth Amendment protection because police themselves did not know Forbus would be prosecuted when they questioned him could miss the point. Forbus obviously knew he might be prosecuted for firing a weapon at several people so in his mind he is still faced with the choice "either to permit the jury to infer guilt from [his] silence or surrender [his] right not to testify and take the stand to explain [his] prior silence."   Id. at ¶31.

{¶ 17} In our view, the critical issue is not whether Forbus was a suspect when he apparently chose not to explain his injury. Rather, for Fifth Amendment purposes, the issue is whether he remained silent in the face of police questioning during an active criminal investigation. We also cautiously note that this Court has recognized "all of the cases that prohibit the use of one's silence as evidence of guilt–even the *Leach* holding that the use of one's pre-arrest, pre-*Miranda* silence violates the court's sense of fair play–do so only when silence is invoked in the presence of law enforcement officers. None * * * extend the constitutional protection to a defendant's behavior during the course of a crime or before law enforcement officers have become involved in the situation." *State v. Buelow*, Clark App. No. 2004 CA 18, 2004-Ohio-6052, ¶28.

{¶ 18} For purposes of our analysis we will assume that Forbus invoked his silence in the presence of law enforcement officers and in response to their questioning during an active criminal investigation. Therefore, we will view the State's use of his silence in its case-in-chief as substantive evidence of guilt as a violation of his Fifth Amendment right against self-incrimination.

{¶ 19} The remaining issue is whether the Fifth Amendment violation requires

reversal of Forbus's convictions. We conclude that it does not. As a preliminary matter, it is questionable whether defense counsel sufficiently objected to the police officers' testimony about his silence. The prosecutor initially raised the issue in his opening statement, telling jurors that Forbus gave his name, birth date, and Social Security number but refused to say anything else. (Trial transcript at 100). Defense counsel did not object to the opening statement. Instead, defense counsel first objected on the morning of the second day of trial. In apparent anticipation of the police officers' testimony later that day, defense counsel raised the Fifth Amendment issue out of the jury's presence. (Id. at 225-227). The trial court took the matter under advisement until after the lunch recess. At that time, the trial court treated defense counsel's oral objection as a motion in limine and overruled it. (Id. at 335). Following additional remarks by the prosecutor, the trial court reiterated its ruling by telling defense counsel: "I'll overrule your objection, then, and note your exception." (Id. at 336). The prosecutor proceeded to call each of the four police officers to testify. In the course of their testimony, the officers stated that Forbus had refused to answer their questions. Defense counsel did not object during this testimony.

{¶ 20} Even if we assume, arguendo, that defense counsel's objection on the morning of the second day of trial, alone, was enough to preserve the issue for appeal, we conclude that the Fifth Amendment violation constituted harmless error.[1] See, *e.g.*, *State v. Thompson* (1987), 33 Ohio St.3d 1, 4 (recognizing that a violation of a defendant's constitutional right against self-incrimination is subject to harmless-error review). Notably, nine eye-witnesses

---

[1] If the lack of a contemporaneous objection when the police officers testified resulted in a waiver of Forbus' objection, then plain-error analysis would apply. Based on our determination above that the Fifth Amendment violation here constituted harmless error, the result would be the same under plain-error review, which is less favorable to a defendant.

testified about the shooting and what they saw. All but one of them testified that Forbus fired first. (Trial transcript at 123, 155, 189, 208, 234, 263, 282, 295, 309). The other witness heard shots and looked up but was not asked who fired first. Although they lived on the same street, not all of the eye-witnesses were friends. Some of them did not even know the Hamblins. (Id. at 241, 251, 292-293).

{¶ 21} The fact that police found Forbus a few blocks away and bleeding from a gunshot wound to the neck establishes, beyond a reasonable doubt, that he was the person eye-witnesses saw firing at Aaron Hamblin. The uncontroverted testimony of the eight eye-witnesses (some of whom were disinterested) who saw Forbus fire first establishes, beyond a reasonable doubt, that Forbus was guilty of the offenses charged. This conclusion is strengthened by the unrefuted testimony of Jeffrey Fugate, who recounted hearing a "thug" and finding a nine-millimeter bullet lodged in the exterior of his house at the time of the shooting. (Id. at 324-325).[2] In light of the foregoing evidence, we conclude, beyond a reasonable doubt, that the jury would have convicted Forbus even absent the improper testimony about his silence. Introduction of that testimony constituted harmless error, and Forbus's convictions need not be reversed. *Thompson*, at 4. Accordingly, the first assignment of error is overruled.

{¶ 22} In his second assignment of error, Forbus alleges that he received constitutionally ineffective assistance of trial counsel. He advances two arguments in support. First, he contends counsel provided ineffective assistance by not seeking suppression of Aaron

---

[2] Although defense counsel stressed that a home-invasion shooting had occurred at Fugate's residence a week or so earlier, the record reflects that the home-invasion shooting occurred *inside* the home. (Trial transcript at 330).

Hamblin's photo line-up identification of him. Second, he claims counsel provided ineffective assistance by making an untimely objection to the State's use of his pre-arrest silence as evidence of guilt.

{¶ 23} To prevail on his claim, Forbus must show deficient performance and resulting prejudice. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. To establish deficiency, he must show that counsel's representation fell below an objective standard of reasonableness. Id. To show prejudice, he must demonstrate that counsel's deficiency impacted the judgment against him. *State v. Bradley* (1989), 42 Ohio St.3d 136. Reversal is warranted if there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. Id.

{¶ 24} Upon review, we conclude that Forbus cannot prevail on his ineffective-assistance claim. "When a witness has been confronted with a suspect before trial, due process requires a court to suppress the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt *and* the identification was unreliable under the totality of the circumstances." *State v. Armstrong*, Montgomery App. No. 20964, 2006-Ohio-1805, ¶16. "The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." Id. "If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required." Id.

{¶ 25} In the present case, Forbus asserts, without elaboration, that a photo spread

shown to Aaron Hamblin was "unduly suggestive." Having reviewed the pictures, we see nothing unduly suggestive about them. In light of that determination, and absent any specific argument from Forbus, we find no basis for suppressing Aaron Hamblin's identification. As a result, defense counsel did not provide deficient representation by failing to seek suppression.

{¶ 26} With regard to the State's use of his silence against him, Forbus claims his attorney should have raised the issue in a pre-trial motion in limine or filed a motion to suppress. We see no deficient performance on these grounds. Failure to file a pre-trial motion in limine, which results in only a tentative ruling by a trial court, does not constitute ineffective assistance  of counsel provided counsel objects at trial sometime before the evidence is introduced. *State v. Lenoir*, Montgomery App. No. 19241, 2003-Ohio-2820, ¶25. This is precisely what occurred here. Despite not filing a true liminal motion, defense counsel objected to the prosecutor's use of Forbus's silence against him before any of the officers testified. (Trial transcript at 225, 335).  Finally, we see no basis for having Forbus's invocation of his silence "suppressed." There was nothing illegal about the police officers' interaction with Forbus. He was not under arrest when they questioned him, and he remained free to answer or refuse to respond. The only issue was whether the State could use his decision to remain silent against him. The use of his silence as substantive evidence of guilt raised a Fifth Amendment self-incrimination issue, not a Fourth Amendment suppression issue. Thus, defense counsel did not provide deficient representation by failing to seek suppression of Forbus's silence. The second assignment of error is overruled.

{¶ 27} In his third assignment of error, Forbus challenges the legal sufficiency of the evidence to support his convictions. In support, he notes that police never found the gun he

allegedly fired, never found any shell casings from the gun he allegedly fired, and never found any property damage in the immediate area of the shooting. Although police did find a single nine-millimeter bullet in the siding of a porch three houses down the street, Forbus claims this location was "out of the immediate range of fire" and was a location where another shooting had occurred a month earlier. Forbus reasons that "[i]t is difficult to comprehend how a man could fire at least four shots at a range of 6-10 feet and hit absolutely nothing and leave no shell casings for the evidence team to find." As a result, he argues that his convictions are based on legally insufficient evidence.

{¶ 28} When a defendant challenges the sufficiency of the evidence, he is arguing that the state presented inadequate evidence on each element of the offense to sustain the verdict as a matter of law. *State v. Hawn* (2000), 138 Ohio App.3d 449, 471. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.

{¶ 29} With the foregoing standards in mind, we conclude that Forbus's convictions are based on legally sufficient evidence. Numerous eye-witnesses testified that they either saw a gun in Forbus's hand and saw him shoot it or saw what they described as fire, flames, sparks, or flashes coming from his hand. The State's evidence established that Aaron Hamblin fired a .40 caliber Glock handgun. Aaron Hamblin described the weapon Forbus fired as a

semi-automatic handgun. Jeffrey Fugate, a resident of the house where police found a nine-millimeter bullet lodged in the siding, testified that he heard a "thug" hitting his house around the time of the shooting. Although police never recovered a nine-millimeter handgun or found any nine-millimeter shell casings at the scene, the State presented legally sufficient evidence to support a finding that Forbus had fired a handgun at his intended victims and had struck a neighbor's house. Therefore, the State presented legally sufficient evidence to support Forbus's conviction for felonious assault (deadly weapon), improperly discharging a firearm at or into a habitation, and a related firearm specification.[3] The officers' failure to recover the weapon Forbus fired or any of his shell casings does not negate the legal sufficiency of the State's evidence. Accordingly, the third assignment of error is overruled.

{¶ 30} The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . . .

FROELICH and CELEBREZZE, JJ., concur.

(Hon. Frank D. Celebrezze, Jr., Eighth District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.)

Copies mailed to:

Mathias H. Heck, Jr.
Kirsten A. Brandt
Jay A. Adams
Hon. Timothy N. O'Connell

---

[3] Although Forbus also challenges a conviction for carrying a concealed weapon, we note that the trial court merged that offense into the felonious assault (deadly weapon) for purposes of sentencing. See Termination Entry, Doc. #50.